Graham *v.* Mt. Airy Building and Loan Assn., Appellant.

Argued October 21, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*George Hart,* for appellant.

*George Gowen Parry,* and with him *C. Laurence Cushmore, Jr.,* and *Harold C. Roberts,* for appellee.

OPINION BY GAWTHROP, J., January 30, 1931:

Plaintiff, a mortgagor, brought this action in assumpsit against the defendant mortgagee, a building and loan association, to recover damages under the Act of May 28, 1715, 1 Smith's Laws 95, 1 Purdon 1186, for its failure to satisfy of record a mortgage which it held on plaintiff's property. Plaintiff has judgment on her verdict and defendant appeals.

There was no dispute as to the facts. On May 17, 1917, plaintiff, a married woman, bought premises No. 5422 Whitby Avenue, Philadelphia, and thereafter executed and delivered to the defendant association a second mortgage thereon in the amount of $1,000. At the time plaintiff was not a member of the association, but her husband was the owner of five free shares in its 11th series on which he had been paying for upwards of three years, and which had a value of $220. On the day of the execution of the mortgage the husband gave defendant an absolute assignment of all his right, title and interest in the five shares of stock. For this defendant gave the husband its check for $1,000, which he endorsed and used in settlement for the property. Thereafter plaintiff made monthly payments to the association of $10.50, of which $5 represented a payment of $1 per share on the five shares of stock, according to the provisions of the mortgage, until the stock matured in March, 1925. On February 16, 1925, pursuant to a resolution of the board of directors of the association, that notice be mailed to stockholders, its secretary wrote plaintiff a letter advising her that the 11th series of stock would mature at the March meeting at $200.59 a share without fur-

ther payment of dues, that her interest and premium charges due at the March meeting would be $5.50, and that "this maturity will cancel the $1,000 mortgage held on property No. 5422 Whitby Avenue. Please sign the enclosed power of attorney and return, together with $2 for recording of satisfaction of mortgage, which will be placed on record within a few days and all papers in connection with same returned to you." Thereupon plaintiff sent defendant her check for $7.50 in payment of these charges and also a letter of attorney to defendant's secretary authorizing him to "sell, assign and transfer unto the Mt. Airy Building and Loan Association my five (5) shares of the capital stock of the Mt. Airy Building and Loan Association, Book No. 1141, of the 11th series." After applying the maturity value of the shares to the mortgage loan, there was due plaintiff a balance of $2.95 for which defendant drew its check to plaintiff on March 3, 1925. But defendant did not send the check to her and did not satisfy the mortgage. On February 17, 1925, its secretary wrote plaintiff, stating that he had received a letter from an attorney on behalf of her husband demanding that the association refuse to satisfy the mortgage. Plaintiff then made a demand on defendant to satisfy the mortgage and later retained an attorney who made such a demand for her. After the refusal to satisfy was persisted in until October, 1926, this suit was brought.

The first and principal contention made in behalf of the appellant association is that plaintiff cannot recover because the mortgage was never paid. The argument, as we understand it, is that although the husband's assignment of his shares to the association was absolute on its face, it was intended as, and treated as having been given for, collateral security only, because the stock remained in the husband's name on the books of the association and the associa-

tion accepted the monthly payments on the stock and thereby continued to treat him as a stockholder, and that, therefore, it could not appropriate the stock to the payment of the debt on the bond and mortgage because there had been no default by the borrower. One answer to this argument is that the husband assigned his stock absolutely and unconditionally and not as collateral. He parted with his title thereto entirely and thereby ceased to be a member of the association: Stoddard v. Thomas, 60 Pa. Superior Ct. 177, and Stoddart v. Myers, 52 Pa. Superior Ct. 179. To the fullest extent possible the husband appropriated his interest in the stock to the mortgage which was to be created: Wadlinger v. B. & L. Assn., 153 Pa. 622. Another complete answer to appellant's argument is that, although the stock remained in the name of the husband on the books of the association, the latter treated the wife as a member of the association and as the owner of the shares, described her in the mortgage as a member, made the loan upon the security of her property, accepted payments from her on the shares, addressed its communications to her, notified her when the stock was about to mature, and requested of her a power of attorney to transfer the shares to the association. The secretary of the association testified that he always thought, until the time came to satisfy the mortgage, that she was a member of the association. It would have been more regular if the shares had been assigned by the husband to plaintiff and then by her to the association, because it is customary for building and loan associations to require that shares of stock be owned by the person or persons to whom the loan is made. However, as the husband had parted with his interest in the stock and the association treated plaintiff as the owner thereof and, in the words of its secretary at the trial, "took the matured value of that book to discharge a mortgage

of $1,000 ...... The association got the $1,000 and applied it against the mortgage loan," it has "received full payment and satisfaction of the mortgage." While payments on the stock of building and loan associations are not ipso facto payments on the loan, the borrower may, except in the case of insolvency, apply his payments on the stock to the loan: Consolidated B. & L. Assn. v. Shipley, 95 Pa. Superior Ct. 232, 237.

The only other question mentioned by appellant in its statement of the questions involved is whether damages may be recovered under the Act of 1715, supra, in the absence of evidence that the refusal to satisfy was wanton and malicious. It is sufficient answer to state that by the terms of the act mere neglect to satisfy within three months after request, etc., is sufficient to create liability. In our view the facts necessary to bring the case within the act were fully established and were uncontradicted, and the trial judge would have been warranted in charging that plaintiff was entitled to a verdict. It was admitted that the amount due under the mortgage had been paid, with the cost of satisfaction. The court could have charged, as matter of law, that the husband had no right against the association that would justify it in paying any attention to his demands. In submitting to the jury the question whether or not there was a real dispute between the parties as to whether or not this mortgage should be satisfied, the court gave defendant an advantage to which it was not entitled. The course taken by the court below in Crawford v. Simon, 159 Pa. 585, might well have been followed. The action of the court below in dismissing defendant's motions for judgment n. o. v. and for a new trial was right.

The judgment is affirmed.