Bennett LEVIN and Linda Levin

v.

K.B. WEISSMAN

v.

Harry RUTENBERG, et al.

Civ. A. No. 82–3874.

United States District Court,
E.D. Pennsylvania.

Aug. 31, 1984.

Howard J. Creskoff, Philadelphia, Pa., for plaintiffs.

David N. Bressler, Philadelphia, Pa., for K.B. Weissman.

Harry A. Rutenberg, Philadelphia, Pa., for Harry Rutenberg.

Ronald Rutenberg, Philadelphia, Pa., for Ronald Rutenberg, Michael Rutenberg & Laurence Rutenberg.

## MEMORANDUM

KATZ, District Judge.

Defendant K.B. Weissman has moved for a new trial and for judgment n.o.v. against plaintiffs Bennett and Linda Levin and third-party defendants Harry Rutenberg and the law firm of Rutenberg, Rutenberg, Rutenberg & Rutenberg. Following a six-day trial, the jury awarded plaintiffs $200,000 on their claim under a Pennsylvania statute originally enacted in 1715 which imposes civil penalties for failure to satisfy mortgages in a timely manner. The jury also found that Harry Rutenberg, Weissman's lawyer at the crucial time, had committed malpractice, but awarded no damages on the malpractice claim. The Court then molded a verdict in favor of plaintiffs for $200,000, in favor of third-party defendants, and against defendant.

A trial judge may grant a new trial where the verdict is against the weight of the evidence, or is excessive, or where errors in rulings or the charge warrant it. A motion for judgment n.o.v. may only be granted if the court finds, as a matter of law, that the record "is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief." *Denneny v. Siegel*, 407 F.2d 433, 439 (3d Cir.1969). The evidence must be viewed in the light most favorable to the prevailing party at trial, and every reasonable and fair inference must be drawn which supports the verdict. *Vizzini v. Ford Motor Co.*, 569 F.2d 754, 757–758 (3d Cir.1977).

Viewed under these standards, the evidence supports the jury's verdict in all respects.

The statute on which plaintiffs base their claim provides that a mortgagor may recover a penalty up to the amount of the mortgage money if the mortgagee fails to mark the mortgages satisfied within forty-five days after:

—receipt of full satisfaction and payment of all money due (principal and interest);

—request by the mortgagor to mark the mortgages satisfied; and

—tender by the mortgagor of the reasonable charges or costs of marking the mortgages satisfied.

21 Pa.Stat. §§ 681, 682.[1] The statute does not impose liability where the mortgagee

---

1. The statute provides:
   § 681. Satisfaction of mortgage on margin of record or by satisfaction piece
   Any mortgagee of any real or personal estates in the Commonwealth, having received full satisfaction and payment of all such sum and sums of money as are really due to him by such mortgage, shall, at the request of the mortgagor, enter satisfaction either upon the margin of the record of such mortgage recorded in the said office or by means of a satisfaction piece, which shall forever thereafter discharge, defeat and release the same; and shall likewise bar all actions brought, or to be brought thereupon.

   § 682. Fine for neglect
   And if such mortgagee, by himself or his attorney, shall not, within forty-five days after request and tender made for his reasonable charges, return to the said office, and there make such acknowledgment as aforesaid, he, she or they, neglecting so to do, shall for every such offence, forfeit and pay, unto the party or parties aggrieved, any sum not exceeding the mortgage-money, to be recovered in any Court of Record within this Commonwealth, by bill, complaint or information.
   21 Pa.Stat. §§ 681 (1983), 682 (1968).

honestly and reasonably believes that the mortgagor is not entitled to have the mortgages marked satisfied. *Werner v. Automobile Finance Co.*, 347 Pa. 217, 31 A.2d 898 (1943).

Plaintiffs claimed the penalty based on Weissman's failure to mark satisfied two mortgages, one on the Levins' house and one on a business property. The mortgages were each for $200,000, securing a January 21, 1977 $200,000 loan to the Levins. The loan secured by the mortgages was to be repaid in three months, on April 21, 1977. The interest rate was 2% per month with a minimum of $13,000. (N.T. 5–7.)

The $200,000 loan was not repaid on April 21, 1977, and Weissman agreed to an extension for a $2,500 charge. (N.T. 74; 4.96; 4.212.) In 1977, Levin wrote a series of letters to Weissman requesting an accounting. In September, 1977, Levin sued Weissman and several other individuals, alleging fraud, misrepresentation, conversion and breach of fiduciary duties, and seeking an accounting for the proceeds of various transactions to offset Levin's liability to the defendants. The suit arose from a series of real estate ventures in which Levin participated with Howard Garfinkle, a defendant in that suit. Weissman counterclaimed against Levin on the $200,000 loan. Judge Luongo ruled that Levin's outstanding indebtedness to Weissman on the $200,000 loan was $128,000 in principal as of June 11, 1980, with 6% interest to the date of entry of judgment and the 2% per month rate in the note on unpaid balances after the date of judgment. *Levin v. Garfinkle*, 492 F.Supp. 781, 818 (E.D.Pa.1980). On October 16, 1980, Judge Luongo entered judgment against Levin in favor of Weissman for $162,407.00.

Weissman appealed Judge Luongo's ruling on November 17, 1980. Levin also appealed. The Court of Appeals granted Levin's motion to dismiss Weissman's appeal for failure to file briefs. Order of 9/18/81. Alleged malpractice leading to this dismissal forms the basis for Weissman's third-party claim against Harry Rutenberg and the Rutenberg law firm.

By letter of October 17, 1980 (Ex. P–14), counsel for Levin wrote to Harry Rutenberg, counsel for Weissman, stating:

I have been calling to tender you, on behalf of Bennett Levin, $162,407, in satisfaction of the judgment on your counterclaim entered by Judge Luongo yesterday. I am prepared to pay this amount immediately in return for appropriate satisfaction pieces (for the mortgages from Levin to Weissman).

Because we are prepared to pay this today, we are not prepared to pay any interest beyond today.

By order of November 26, 1980, Judge Luongo corrected an error in his ruling to hold that Levin owed Weissman $149,407.00. Levin's counsel wrote to Harry Rutenberg on December 4, 1980 (Ex. P–19):

On behalf of Bennett Levin, I am authorized to tender to you $149,407 in satisfaction of the judgment on your counterclaim entered by Judge Luongo on November 26, 1980. I am prepared to pay this amount immediately in return for the appropriate satisfaction pieces (for the mortgages from Levin to Weissman). This request and tender is made pursuant to 21 Purdon's Penna. Statutes Annotated § 681 and § 682.

Again on September 18, 1981, the date Weissman's appeal was dismissed, Levin's counsel wrote "to tender to you, once again, $149,407, in satisfaction of the judgment .... I am prepared to pay this amount immediately in return for the appropriate satisfaction pieces for the mortgages from Levin to Weissman." (Ex. P–24.) A similar letter issued on October 13, 1981 to new counsel for Weissman. (Ex. P–25.)

On October 20, 1981, counsel for Levin and Weissman agreed on a settlement of the matter of the $200,000 loan and the case on appeal. Levin's counsel sent checks totalling $147,765 (the judgment less the costs of appeal), and enclosed mortgage satisfaction pieces for Weissman to execute. The parties agreed to submit to Judge Luongo the issue of the rate of interest from the date of judgment to the

October, 1981 payment. A sum representing interest at 6% for that period was placed in escrow. Judge Luongo resolved that issue on April 2, 1982, holding that interest accrued at 6%, not 2% per month as Weissman contended. That interest was paid from the escrow account in June, 1982.

Weissman received the checks on October 29, 1981. (N.T. 4.158.) On November 10, 1981, executed satisfaction pieces were returned to Levin's counsel. Two days later, Levin's counsel requested the original mortgages. On December 11, Weissman's counsel received the original mortgages. These were hand-delivered to Levin's counsel on the 14th, and were then satisfied of record.

## I. LEVINS v. WEISSMAN

### A. The Jury Could Conclude That The Statutory Elements Were Met.

There was sufficient evidence at trial from which the jury could conclude that all of the statutory elements were met.

#### 1. Validity of mortgages

■ Defendant first contends that the mortgages were void because Linda Levin's name was concededly signed by Bennett Levin, her husband. (N.T. 8; 3.42.) Linda only discovered the existence of the mortgages in June, 1978, during the course of discovery in the pending *Garfinkle* lawsuit. (N.T. 3.41–42.) There was evidence from which the jury could conclude that Mr. Levin was acting as his wife's agent and that she ratified his acts on her behalf. Both plaintiffs testified that Mr. Levin had his wife's authority to conduct business on her behalf. (N.T. 9; 3.43–46.) Mrs. Levin expressly ratified the mortgages. (N.T. 3.43–60.) And Weissman, through his counsel Harry Rutenberg, implicitly admitted the validity of these mortgages by bringing foreclosure actions on these properties against both Levins. (Exs. P–10, P–11.) The Court charged that the Levins had to prove by a preponderance of the evidence that the mortgages were valid, that is, signed by or with the authority of

the borrowers. (N.T. 6.14–15.) The Court also fully instructed the jury on the applicable law of agency. (N.T. 6.22–23.)

#### 2. Full payment of principal and interest

Weissman argues that he had not "received full satisfaction and payment of all such sum and sums of money as are really due to him," 21 Pa.Stat. § 681, more than forty-five days before the mortgages were marked satisfied. He contends that under the statute, the mortgage balance of principal and interest must be *received* by the mortgagor. He claims that while the mortgages were satisfied in December, 1981, he did not receive the principal until November 3, 1981 when plaintiff's uncertified checks would normally have cleared the bank. Further, he states that he did not get the interest due under Judge Luongo's April 2, 1982 ruling until June, 1982.

The Court charged that the statute could be satisfied if the jury found that the Levins *tendered* full payment of principal and interest.[2] (N.T. 6.15–18.) The question whether tender is sufficient has not been squarely litigated under this statute. In *Crawford v. Simon*, 159 Pa. 585, 28 A. 491 (1894), the Court in dictum approved the notion of tender. The trial court had adopted the following proposed point for charge (emphasis added):

> The law provides that before a mortgagee, who is the holder of a mortgage, can be compelled to satisfy the same, the debt, interest and all reasonable costs or charges have been paid *or tendered* to him.

While the statutory language speaks of receipt, Weissman's interpretation would permit a mortgagee to escape the statute by failing, for example, to cash a check that he had received in full payment of the debt. A mortgagee could defeat the purpose of the statute by manipulation if tender were not recognized. The charge,

---

**2.** Defendant does not object to the Court's definition of tender. Rather, he contends that tender is legally insufficient to meet the statute, and that the evidence does not show a valid tender here as a matter of law.

therefore, instructed that tender of full payment is all that the statute requires.

■ There was sufficient evidence from which the jury could have found a valid tender of full payment more than forty-five days before the mortgages were satisfied. Counsel for Levin repeatedly offered money. There was testimony which the jury could have credited that Levin was ready, willing and able to pay. As Judge Luongo stated in the *Garfinkle* proceedings of April 2, 1982 regarding Levin's tender in October, 1980: "As far as I am concerned, there was clearly a tender here. It was a tender conditioned on a satisfaction of a mortgage, and under the circumstances the satisfaction of the mortgage should have been given; there is just no question." (Ex. P–30, p. 16.) In addition, Weissman himself alleged and admitted in his April, 1982 malpractice suit against Harry Rutenberg that the latter had rejected a legal tender in October, 1980. (N.T. 4.157–58; Ex. P–29.) There was sufficient support in the record for the jury's conclusion that a valid tender was made.

■ The evidence also negates defendant's argument that the tender was invalid because it was accompanied by an unreasonable condition, i.e., a request that the mortgages be satisfied. The jury was instructed that a tender is valid if a condition is attached which the offeree cannot reasonably reject (N.T. 6.20–21.) The jury had an adequate basis to find that the request for satisfaction of the mortgages was reasonable and did not invalidate the tender.[3]

■ Weissman's contention that the jury could not properly have found that he was tendered the full amount due must also be rejected. There was evidence that on October 17, 1980, Levin's counsel offered the full amount of the judgment entered by

Judge Luongo on October 16, 1980. Similarly, on December 4, 1980 counsel tendered the amount of judgment corrected by Judge Luongo on November 26, 1980. The fact that Judge Luongo awarded interest in April, 1982 does not make the 1980 tenders invalid. The jury could have found that this interest would not have been owing to Weissman if he had accepted the money offered by the Levins. Similarly, the fact that Weissman later recovered interest did not make the condition in the earlier tenders—the request that the mortgages be satisfied—unreasonable.

*3. Reasonable belief of Weissman that matter disputed*

■ The Court properly charged that there would be no recovery if Weissman had a reasonable, honest belief that the Levins were not entitled to have the mortgages satisfied. *Werner v. Automobile Finance Co., supra,* 347 Pa. at 220–21, 31 A.2d 898. There was sufficient evidence from which the jury could conclude that Weissman did not refuse Levins' tender out of such a belief. Weissman argues that his appeal demonstrates his honest and reasonable belief that the matter was disputed. However, the evidence showed that Weissman knew of the appeal (N.T. 4–123–24; Ex. D–KK), of his counsel's stroke (N.T. 4.124–25), and of the motion to dismiss the appeal (N.T. 4.137–38), yet Weissman did not change counsel until after the appeal was dismissed (N.T. 4–152). The jury could have concluded that the fact of the appeal did not establish Weissman's honest, good faith belief that there was a genuine dispute, in view of these events and of the course of dealings and bad feelings between the parties.[4]

---

3. There was expert evidence from Mark Wilcox, attorney for Levin, that this was a reasonable condition to attach to the tender. (N.T. 3.77).

4. There was evidence that Weissman refused to give Levin an accounting of his indebtedness; that Weissman failed to acknowledge payments received and to credit them to Levin's account; that Weissman instituted foreclosure actions on

the Levins' properties; that Weissman failed to acknowledge payments by Levin even after Weissman's counsel stipulated to such payments in court; that Weissman was not concerned with what he felt was a small sum of money; and that there were bad feelings between the parties (N.T. 4.205, 208, 212, 163).

### 4. Request by plaintiffs to mark mortgages satisfied

■ The jury could fairly conclude that plaintiffs requested that Weissman mark the mortgages satisfied. Their counsel's letters request satisfaction pieces. Defendant argues that any request to satisfy was ineffective under the statute because it was made on behalf of Mr. Levin only, not both mortgagors. However, the Court instructed the jury that a husband can act as his wife's agent where she has authorized him to do so, just as an attorney can act as his client's agent. (N.T. 6.22–23.) There was sufficient evidence at trial that Linda Levin authorized her husband to act as her agent in conducting business matters. The jury could properly have concluded that counsel's letters setting forth Bennett Levin's position also set forth Linda's position. Cf. J.R. Christ Construction Co. v. Olevsky, 426 Pa. 343, 348–49, 232 A.2d 196 (1967) (presumption with respect to property held by the entireties that during a marriage either has the power to act for both where benefits inure to both).

### 5. Tender of reasonable costs

■ Defendant contends that plaintiffs failed to establish the statutory element of tender by plaintiffs of the reasonable costs of marking the mortgages satisfied. The Court charged that plaintiffs could fulfill this element by showing an understanding between Weissman and plaintiffs that the Levins or their lawyer would take the step of having the mortgages marked satisfied. The law does not require an idle, unnecessary act. The Court also charged that if there was no such understanding, a failure to tender the satisfaction fee would defeat plaintiffs' claim. (N.T. 6.18–20.)

This charge was proper under the statute. Plaintiffs need not indulge in idle ceremony to protect their rights under the statute. The jury could have found from the parties' course of dealings, correspondence and testimony that the parties had an understanding that such a fee need not be tendered because the Levins, not Weissman, were going to take the step of going to the county office to clear up the official records. Indeed, that was how the mortgages were actually satisfied on December 14, 1981.

### 6. Failure to mark the mortgages satisfied in timely manner

■ The mortgages were satisfied in December, 1981. The jury could have found a valid tender of the full amount of mortgage money and interest due in October or November, 1980, more than forty-five days before December, 1981. In addition, the jury could have concluded from the evidence that plaintiffs fulfilled the statutory requirements in October, 1981 by sending checks to Weissman more than forty-five days before the mortgages were satisfied.

### 7. Damages

■ The statutory civil penalty permits an award of damages up to the amount of the mortgage-money, both to compensate the aggrieved party and to punish the offender. Werner v. Automobile Finance Co., supra, 347 Pa. at 219, 31 A.2d 898. Although actual injury is not necessary to make out a case, that is one factor for the jury to consider, as well as the attitude and conduct of the defendant, whether it was wanton and willful. "Everything which can and does make acts the subject of praise or censure; as of honesty or dishonesty, of kindness or cruelty, may enter into the consideration of the jury." Id. at 220, 31 A.2d 898, quoting Henry v. Sims, 1 Whart. 187, 200 (1836); Krevolin v. Williams, 160 Pa.Super. 411, 51 A.2d 422 (1947). The jury should consider whether the mortgagors were embarrassed, or hindered in the sale of their property by the unjustified refusal to satisfy the mortgages. Specktor v. Specktor, 158 Pa.Super. 323, 328, 44 A.2d 767 (1945). The statute does not require plaintiffs to show that defendant acted wantonly or maliciously, although that is a factor. Graham v. Mount Airy Building & Loan Association, 102 Pa.Super. 116, 156 A. 592 (1931).

■ The jury was properly instructed under these tests. In fact, the charge was

favorable to Weissman because it included a punitive damage test, over plaintiffs' objections. (N.T. 6.25–27.) In view of all the evidence, I cannot say that the verdict was arbitrary or capricious, considering what the jury could well have found to be unreasonable and uncivilized business conduct by defendant. It was not excessive nor was it against the weight of the evidence; there was ample evidence to support the verdict. Nor is there a basis for judgment n.o.v. It was within the province of the jury to weigh the evidence, and its verdict will not be disturbed.[5] Nor did error in evidentiary rulings affect the verdict.[6]

B. *There Was No Error In Permitting Linda Levin To Be Joined As A Party-plaintiff Before Defendants Began Their Case.*

Defendant objects to the Court's ruling after plaintiff husband rested, permitting him to amend his complaint to add his wife as a second plaintiff. Defendant argues that Mrs. Levin is an indispensable party, that her claim is barred by one year statute of limitations, 42 Pa. Const.Stat.Ann. § 5523(2) (1982), and that it was error to submit her claim to the jury.[7]

▆▆ First, the Court has latitude over the conduct of the litigation. There was discretion to permit plaintiff to amend his complaint immediately after he rested his case, in response to defendant's motion for a directed verdict on grounds that Linda Levin had not been named a party plaintiff. The defendant and third-party defendants identified no prejudice from this amendment in response to the Court's repeated questions at the time this matter came up at trial. The amendment added no new claims, issues or evidence to the case. Linda Levin was deposed before trial and called in Bennett Levin's case, where she was cross-examined. Moreover, the Court granted the affected parties leave to re-examine any witness in light of this amendment. (N.T. 4.54–4.68.) *See Wassel v. Eglowsky,* 399 F.Supp. 1330, 1335 n. 1 (D.Md.1975) (amendment to complaint solely to add wife as plaintiff permitted "late in the litigation" where no identifiable prejudice resulted). Under Fed.R.Civ.P. 15(a), leave to amend "shall be freely given when justice so requires." Defendant had a full and fair opportunity to defend against Mrs. Levin's claim and thus suffered no prejudice. *Evans Products Co. v. West American Insurance Co.,* 736 F.2d 920 at 923–924 (3d Cir.1984). Moreover, defendant never claimed at trial, when the issue of amending the complaint was argued, that Mrs. Levin's claim was barred by the statute of limitations.

▆▆ Mrs. Levin's claim is not barred by the statute of limitations since the amended complaint relates back to the filing of the original complaint. There is, therefore, no prejudice in permitting the amendment in that regard. Fed.R.Civ.P. 15(c); *Loudenslager v. Teeple,* 466 F.2d 249 (3d Cir.1972); *Britt v. Arvanitis,* 590 F.2d 57 (3d Cir. 1978); *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); 3 Moore's *Federal Practice* ¶ 15.15[2] (2d ed. 1984).[8]

---

**5.** In addition to the evidence recited above, the jury could have considered Weissman's conduct at trial. Weissman indicated that interest on $162,497 did not mean much to him in light of his own net worth, conservatively estimated at about $1.9 million (N.T. 4.163, 4.189–92); he accused plaintiff of blackmail and insinuated that the trial would kill him (N.T. 4.180–81; 4.205–207, 4.211), and he told plaintiff's counsel that he ought to be ashamed of himself (N.T. 4.206). Bennett Levin testified that he was "outraged" when his tender was rejected and that he felt Weissman was trying "to get" his properties. (N.T. 47.)

**6.** Weissman argues against the admission of evidence of events before October 17, 1980 (the

date after Judge Luongo's ruling in *Levin v. Garfinkle,* 499 F.Supp. 1344 (E.D.Pa.1980)). This evidence was relevant to damages because it shed light on the parties' course of dealings and defendant's motives.

**7.** In view of the Court's disposition of these claims, it is not necessary to determine whether Mrs. Levin was an indispensable party plaintiff.

**8.** *Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), is distinguishable. In *Walker,* the Court noted that the state rule, defining how to commence an action for purposes of tolling the statute of limitations, did not directly conflict with Fed.R.Civ.P. 3, which states that an action is commenced by filing a

Under Rule 15(c), "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Linda Levin's claim falls squarely within the rule's language. Defendant had ample fair notice of the facts on which she based her claim and of her husband's identical complaint arising out of the same events. Her complaint therefore is deemed to have been instituted within the statute of limitations. *Wassel v. Eglowsky, supra; American Banker's Insurance v. Colorado Flying Academy, supra; Patraka v. Armco Steel Co.,* 495 F.Supp. 1013, 1016 (M.D.Pa.1980).[9]

## II. WEISSMAN v. RUTENBERGS

■ Weissman argues that the verdict was fatally inconsistent because the jury found that Harry Rutenberg had committed legal malpractice, but assessed no damages against Rutenberg. The essence of Weissman's complaint against Rutenberg was that he permitted the appeal in *Levin v. Garfinkle* to be dismissed for failure to file briefs. In view of the evidence that Weissman knew that Rutenberg was hospitalized for a stroke during the pendency of the appeal, yet took no steps to ensure that his case was being attended to or to get another lawyer, and in light of the testimony concerning the relationship between Weissman and the Levins, the jury could have concluded as it did that while Rutenberg may have acted negligently, any damages to Weissman were the product of

Weissman's own acts or inaction. The jury could have concluded, observing Weissman's demeanor and outbursts as a witness in this case, that he acted in this business matter as an angry, vindictive and petty man and that Weissman called the shots, not his agent, Rutenberg.

■ Defendant's motions for a new trial and for judgment n.o.v. are denied.[10]

complaint. Here, "a clear reading of F.R.Civ.P. 15(c) would directly collide with a contrary state rule, if one in fact exists." *American Banker's Insurance Co. of Florida v. Colorado Flying Academy, Inc.,* 93 F.R.D. 135, 137 (D.Col.1982).

9. It was within the Court's discretion over the scheduling of the trial to avoid needless delay by requiring opening statements Friday afternoon, even though Weissman could not be present until Monday. Weissman's counsel declined to defer his opening until the close of plaintiff's case. Weissman attended the trial starting Monday morning. There was no prejudice in requiring counsel to proceed with opening statements in his client's absence.

10. I also reject Weissman's contention that I should have recused myself from the case on the basis of two historical ties which I disclosed to all parties: that I leased office space in the 1970's to a lawyer now in partnership with plaintiff's lawyer, and that in 1983 I was a partner of plaintiff's lawyer's brother. These facts could not influence my rulings and could not suggest any inappropriate appearance. There is no objective reasonable basis to question my impartiality. 28 U.S.C. § 455(a) (1978); *see Warner v. Global Natural Resources PLC,* 545 F.Supp. 1298 (D.Ohio 1982); *Huff v. Standard Life Insurance,* 683 F.2d 1363 (11th Cir.1982).