Jose Juan ANDUJAR, Jose Antonio
Andujar, Manuel Medina and
Ramon Ramos, Plaintiffs,

v.

Mark ROGOWSKI, Michael Rogowski,
Individually and d/b/a M & M Produce
Farm & Sales, Superintendent William
G. Connelie, New York State Executive
Department, Division of State Police,
Major R.D. Thoubboron, New York
State Police Troop F and New York
State Trooper De Francesco, Defend-
ants.

No. 83 Civ. 2107 (RJW).

United States District Court,
S.D. New York.

Dec. 9, 1986.

Farmworkers Legal Services, Inc., Newburgh, N.Y., for plaintiffs; Thomas A. Harnett, of counsel.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for defendant DeFrancesco; Richard G. Liskov, Asst. Atty. Gen., David S. Cook, Sr. Atty., of counsel.

Keane & Beane, P.C., White Plains, N.Y., for defendants Matthew and Mark Rogowski; Andrew N. Carlen, of counsel.

ROBERT J. WARD, District Judge.

Plaintiffs, four migrant workers, originally brought this action in March 1983 following their eviction from worker housing located on the farm of defendants Rogowski. They alleged violations of their civil rights under 42 U.S.C. §§ 1983 and 1985(3) and appended state law claims that the manner of eviction violated the procedural protections afforded by New York property law. Plaintiffs now seek, under Rule 21, Fed.R.Civ.P., to add three additional plaintiffs evicted in the same incident and to file an appropriately amended complaint under Rule 15, Fed.R.Civ.P. After carefully considering defendants' objections and for the reasons to follow, the Court grants plaintiffs' motion.

### BACKGROUND

Plaintiffs Jose Juan Andujar, Jose Antonio Andujar, Manuel Medina and Ramon Ramos are professional migrant workers who are domiciled in Puerto Rico. Defendants Matthew and Mark Rogowski (the "Rogowskis"), who are brothers and are New York residents, own and operate a vegetable farm known as M & M Produce Farm and Sales located in Orange County, New York. Defendant DeFrancesco is a member of New York State Police Troop F.[1]

During the 1981 growing season, the Rogowski brothers hired plaintiffs under an oral employment contract to work on their farm. On June 30, 1982 plaintiffs allege that they, along with other workers, left to work in a rain-soaked and muddy lettuce field. They aver that defendants supplied no boots or other protective equipment for them or the other workers. Plaintiffs along with some of their fellow workers left the field and returned to the housing camp. The Rogowskis allegedly then ordered the nine workers who had walked out of the fields to leave the housing camp by 6:00 p.m. and threatened to call the police if they did not. On July 1, 1982 the Rogowskis informed the workers who had left the fields the previous day that they would not be allowed to continue work. The Rogowskis allegedly visited the housing camp periodically during the day to renew their threat to call the police. On July 2, Jose Juan Andujar and Jose Antonio Andujar once more traveled to the field to begin work, but again they and their fellow work-

---

1. Plaintiffs in their complaint incorrectly identified Matthew Rogowski as Michael Rogowski. In addition to the Rogowski brothers and New York State Trooper DeFrancesco, plaintiffs originally sued William G. Connelie, the Superintendent of the New York State Police and R.D. Thoubboron, the Major of Troop F of the New York State Police. In a memorandum endorsement dated January 12, 1984, the Court granted a motion by Connelie and Thouborron to dismiss the complaint under Rule 12(b)(6), Fed.R. Civ.P., for failure to state a claim upon which relief could be granted.

ers who had left the lettuce field two days earlier were refused work. The Rogowskis allegedly again visited the housing camp throughout the day on July 2 to order plaintiffs and the other workers to leave. That afternoon, the Rogowskis supposedly distributed final paychecks to the nine workers who had left the field. Finally, at around 8:00 p.m. the Rogowskis arrived at the housing camp in the company of defendant New York State Trooper DeFrancesco. The Rogowskis demanded once again that those workers who had left the lettuce field two days earlier leave the housing camp. Trooper DeFrancesco allegedly informed those workers, whom the Rogowskis pointed out to him, that they would have to leave the housing camp immediately. The workers then left the camp on foot. This suit, based on 42 U.S.C. §§ 1983, 1985(3) and Article 7 of the New York Real Property Actions and Proceedings Law, and common law conspiracy, followed.[2]

This litigation has proceeded at what can charitably be described as a leisurely pace. Although plaintiffs filed this action on March 18, 1983 and the Court originally directed that discovery be completed by June 15, 1984, the parties have sought, and the Court has granted, numerous discovery extensions, the latest of which extended discovery to September, 1985. Counsel for both parties claim the delay resulted in part from the difficulty of scheduling plaintiffs' depositions, in part from the fact that plaintiffs speak only Spanish and in part from the parties' sporadic attempts to settle this matter.

At this now rather advanced stage of the proceedings, plaintiffs seek to add Luis Alberto Rivera, Miguel Rivera Soto and Angel Luis Rodriguez, three of plaintiffs' fellow workers who were involved in the original incident, as plaintiffs and to amend the complaint to reflect their addition. Defendants collectively raise several objections. First, they contend that the running of the statute of limitations as a matter of law bars the addition of the three plaintiffs. Second they assert that plaintiffs have not met the requirements of Rule 15, Fed.R. Civ.P., to amend their complaint inasmuch as they inexcusably delayed amendment past the running of the statute of limitations. Defendants also contend that plaintiffs do not offer the amendment in good faith but rather to further harass the Rogowskis. Finally defendants argue that the inclusion of three additional plaintiffs would clearly prejudice them.

## DISCUSSION

The complaint in this action states five causes of action. The longest period of limitations applicable to any of the claims involved in this action is three years and the shortest is one year.[3] Plaintiffs therefore timely filed this action with respect to all counts on March 18, 1983, less than one year after the allegedly wrongful eviction which occurred on July 2, 1982. At the

---

**2.** Plaintiffs base their first two causes of action, for violation of their constitutional rights, on 42 U.S.C. §§ 1983 and 1985(3). Plaintiffs base their third cause of action on unlawful eviction, *see* N.Y. Real Prop. Acts. § 701 *et seq.*, and the fourth cause of action on forcible eviction, *see id.* § 853. As a fifth cause of action, plaintiffs allege common law conspiracy.

**3.** Section 1983 actions are governed by the most closely analogous state statute of limitations for personal injuries. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In New York, that is the three-year statute of CPLR § 214(5), N.Y.Civ.Prac.Law § 214(5). *Testa v. Gallagher*, 621 F.Supp. 476, 479 (S.D.N.Y.1985); *see Villante v. Department of Corrections of the City of New York*, 786 F.2d 516, 520 n. 2 (2d Cir.1986). Courts look to the same state statute

of limitation to govern actions under § 1985(3). Plaintiffs third and fourth causes of action, alleging unlawful eviction and forcible eviction in violation of various provisions of Articles 7 and 8 of the New York Real Property Actions and Proceedings Law would be governed by the one year limitation of N.Y.Civ.Prac.R. § 215 as an action in tort for assault and battery. *Chapman v. Johnson*, 39 A.D.2d 629, 331 N.Y.S.2d 184 (4th Dep't 1972). Plaintiffs fifth claim, for common law conspiracy, would be governed by the statute of limitations applicable to the wrongful acts plaintiffs allege, here for the violation of their constitutional rights and for wrongful eviction respectively. *See Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981).

time Luis Rivera, Miguel Rivera and Angel Rodriguez sought to join the present suit in October of 1985, the various statutes of limitations applicable to the counts in the complaint would have barred a separate suit on any of those claims. To press their claims, therefore, Rivera, Rivera and Rodriguez must properly join plaintiffs' timely commenced suit.

## I. Rule 21.

■ The Court possesses broad discretion under Rule 21, Fed.R.Civ.P., to permit a change in the parties at any stage in the litigation. 7 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1688 (2d ed. 1986) ("Wright & Miller"). Defendants strenuously argue that plaintiffs may not properly move under Rule 21, Fed.R.Civ.P., to add additional plaintiffs once the statute of limitations has run. Those assertions notwithstanding, the 1966 amendments to Rule 15 specifically overruled prior judicial interpretations that the relation back provisions of subsection (c) did not apply to the addition of parties. 6 Wright & Miller § 1498. "Thus, if the prerequisites prescribed in Rule 15(c) have been met, the addition of a party under Rule 21 should relate back and prevent the successful interposition of a statute of limitations defense." 7 Wright & Miller § 1688 at 476; *see* 3A J. Moore, *Moore's Federal Practice* ¶ 21.04 at 21–30 ("Moore") (if original suit is timely commenced but statute of limitation runs before the addition, party must move in ac-

cord with Rule 15(c)). Plaintiffs then may, consistent with the requirements of Rule 15(c), properly move under Rule 21 to add Rivera, Rivera and Rodriguez as additional plaintiffs.

## II. Rule 15.

■ Leave to amend the complaint under Rule 15, Fed.R.Civ.P., falls within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). Rule 15(a) directs, however, that "leave shall be freely given when justice so requires," and amendments as a general matter are favored in order "to facilitate a proper decision on the merits." *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Reasons to deny a motion for leave to amend include undue delay, bad faith, prejudice to the opposing party or the futility of the amendment. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Fustok v. Conticommodity Services, Inc.,* 103 F.R.D. 601, 603 (S.D.N.Y.1984).

Subsection (c) further provides that if an amendment adding a new plaintiff or a new claim by an original plaintiff is to relate back to the original complaint, the amendment must relate to the same conduct, transaction or occurrence described in the original complaint and defendant must have had the requisite notice of the original action.[4] "Notice of the institution of the

---

**4.** As Rule 15 provides:

(c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper

party, the action would have been. brought against him.

Although Rule 15(c) refers only to an amendment "changing the party," courts and commentators agree that the word "changing" must be interpreted sensibly and pragmatically to include the addition of parties, provided the requisite notice has been given and the identity or similarity of interests is shown. 3 Moore ¶ 15.15[4.–2]. Likewise, while Rule 15(c) refers only to amendments "changing the party against whom a claim is asserted," the rule clearly applies to amendments substituting or changing the plaintiff as well.

The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier. Again the chief consideration of policy is that of the statute of limitations, and the atti-

action" may be formal or informal. Fed.R. Civ.P. 15(c) advisory committee note of 1966, *reprinted at* 39 F.R.D. 69, 82–83; *see* 6 Wright & Miller § 1498. These two requirements assure that Rule 15(c) amendments meet the dictates of due process in that the party opposing the amendment, here the defendant, have had proper notice of the claim contained in the amendment prior to the running of the statute of limitations. One commentator has described the requirements of Rule 15(c) when adding a plaintiff as follows.

As long as a defendant is fully apprised of a claim arising from specific conduct and has prepared to defend the actions against him, he will not be prejudiced by the addition of a new plaintiff and thus should not be allowed to raise a limitations defense.

As long as the original complaint gives defendant adequate notice, an amendment relating back is proper even if it exposes defendant to greater damages. Further, as long as the original complaint provides defendant with adequate notice of the conduct, transaction, or occurrence upon which plaintiff bases his claim and the parties before the court remain the same, it is reasonable to assume that defendant has knowledge of any claim plaintiff might assert in any capacity arising out of the event in dispute.

6 Wright & Miller § 1501 (1st ed. 1971 & Supp.1986).

■ The institution of the original suit itself meets the Rule 15(c) notice requirement when the proposed amendment substitutes the real party in interest for the plaintiff who originally filed suit under Rule 17(a), Fed.R.Civ.P., or adds a plaintiff who asserts an interest in the claim already before the court and such amendments therefore relate back to the original complaint. 6 Wright & Miller § 1501; 3 Moore ¶ 15.15[4.–2] at 15–167–170 ("sufficient identity of interest between the original and new plaintiff would have to be shown, so that assertion of a wholly new cause of action is not sanctioned"); *see Raynor Brothers v. American Cyanimid Co.*, 695 F.2d 382 (9th Cir.1982) (substituting partnership comprised of the major shareholders for the original corporate plaintiff); *Levin v. Weissman*, 594 F.Supp. 322 (E.D. Pa.1984), *aff'd*, 760 F.2d 263 (3rd Cir.1985) (allowing addition of mortgagor's wife who had not signed the mortgage when the amendment added no new claims, issues, or evidence); *Warpar Manufacturing Corp. v. Ashland Oil, Inc.*, 102 F.R.D. 749 (D.Ohio 1983) (allowing substitution of sister corporation when original plaintiff discovered that sales of defective product obtained from defendant had been made through the sister corporation); *Employees Savings Plan of Mobil Oil Corp. v. Vickery*, 99 F.R.D. 138 (S.D.N.Y.1983) (allowing amendment to name fiduciary of ERISA plan as plaintiff after statute of limitations had run when only difference was to add the fiduciary who had the legal capacity to sue); *American Banker's Insurance Co. of Florida v. Colorado Flying Academy, Inc.*, 93 F.R.D. 135 (D.Colo.1982) (adding the insurance carrier subrogated to plaintiff's claim).

■ A court may permit amendments to add additional plaintiffs once the statute of limitations has run to relate back even absent a strict identity of interest.[5] When

---

tude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs.

Fed.R.Civ.P. 15(c) advisory committee note of 1966, *reprinted in* 39 F.R.D. 69, 83–84.

5. Despite the clear intention of Rule 15 to allow relation back to apply to the substitution of new parties, whether plaintiffs or defendants, the Rogowskis strenuously insist that amendments to add parties are simply improper, particularly once the statute of limitations has run. They rely heavily on *Herm v. Stafford*, 455 F.Supp. 650, 654 (W.D.Ky.1978) *aff'd in part, reversed in part*, 663 F.2d 669 (6th Cir.1981), for the proposition that Rule 15(c) "which permits the correction of misnomers does not permit the addition or substitution of new parties." Although that case apparently does so hold, the Court would note that the district court there apparently relied on 3 Moore 15.15 [4.1] which summarized the law as it existed in some jurisdictions prior to 1966. As explained above in the text and in 3 Moore 15.15 [4.–2] nn. 15, 16 (1986), amend-

the proposed amendment would add a newly asserted claim made in another capacity by the original plaintiff or would add a new plaintiff who makes a distinct or aggregate claim, however, Rule 15(c) demands some kind of notice of the new party and its claim beyond notice, afforded by institution of the original suit, of the transaction or occurrence out of which the claim arises.

We find persuasive the emphasis by the court in *Williams [v. United States,* 405 F.2d 234 (5th Cir.1968)] on the need to limit relation back of claims asserted by new plaintiffs in some way beyond the "conduct, transaction, or occurrence" test that applies to relation back of amendments generally. Without some limit, total strangers with claims arising out of a multi-victim incident might join pending actions long after the statute of limitations had lapsed. That would allow the tardy plaintiffs to benefit from the diligence of the other victims and, more importantly, could cause defendants' liability to increase geometrically and their defensive strategy to become far more complex long after the statute of limitations had run. Even if, as here, there were no showing of specific prejudice in the sense of lost or destroyed evidence, defendants would still be deprived of their interest in repose. At some point, defendants should have notice of who their adversaries are.

*Leachman v. Beech Aircraft Corp.,* 694 F.2d 1301, 1309 (D.C.Cir.1983). No single factor succinctly summarizes the adequacy of informal notice, but recent cases illuminate what constitutes sufficient notice in particular contexts.

In *Williams v. United States, supra,* the mother of a child injured by an Army firecracker brought suit as next friend against the United States under the Federal Tort Claims Act. After the statute of limitations had run, the mother sought to amend the complaint to add claims in her own right for loss of services. The Fifth Circuit described the test to be satisfied.

Not only must the adversary have had notice about the operational facts, but it must have had fair notice that a legal claim existed in and was in effect being asserted by, the party belatedly brought in. This becomes of special importance in situations in which a common set of operational facts gives rise to distinct claims (or defenses) among distinct claimants (or defendants).

405 F.2d at 238. The original complaint revealed that the occurrence involved a minor, the minor's parent, and the parent's assertion of a claim. Because the "circumstances of these individuals was such as would reasonably indicate a likelihood that the parent would incur losses of a recoverable kind," the court concluded that the government had received notice of that claim. *Id.* at 239. Thus, the status of the child's mother in suing as next friend along with a liberal interpretation of the complaint sufficiently alerted the defendant to the second, distinct claim made by the mother in her own right.

*Stoppelman v. Owens,* 580 F.Supp. 944 (D.D.C.1983), involved two plaintiffs who were limited partners in an oil well equipment investment plan. They sued the general partner one day prior to the running of

---

ments to Rule 15(c) specifically broadened the scope of the Rule to prevent just such a narrow interpretation. Defendants' reliance on *United States v. Chapman Construction Co.,* 85 F.R.D. 255 (W.D.Okla.1979), is similarly misplaced. In that case, plaintiff had sued one insurance company in the mistaken belief that it had been acting as surety for a construction company to whom plaintiff had furnished labor and services. After the one-year statute of limitations had run, plaintiff attempted to substitute the proper surety and to claim the benefit of the relation back provisions of Rule 15(c). Under the circumstances, the court noted that "[s]ubstitution

of a completely new defendant creates a new cause of action," and denied the relation back because "[p]laintiff ha[d] made no showing in connection with the motion under consideration to bring Defendant St. Paul within the provisions ... of Rule 15(c)." *Id.* at 256; see *Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889, 893–94 (2d Cir.), *cert. denied,* 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983) (plaintiff may not use Rule 15 to substitute a new action over which there is jurisdiction for one where it never existed).

the statute of limitations. Subsequently, plaintiffs sought to amend the complaint to add other limited partners who had also invested in the venture. Defendants contended that the relation back provisions of Rule 15(c) could not apply to the situation where a plaintiff barred by the statute of limitations attempted to join an action brought by other plaintiffs. The court first looked to *DeFranco v. United States,* 18 F.R.D. 156 (S.D.Cal.1955), a case decided before the amendments to Rule 15. *De-Franco* involved an analogous situation in which several members of a partnership who had brought an action to recover taxes paid by the partnership sought to add other partners. As the *Stoppelman* court summarized the holding in *DeFranco:*

> The Court concluded that because the addition of the new plaintiffs did not set up a new claim against defendant, i.e., the wrong was the same, and the defendant was aware from the beginning that the wrong that the original plaintiffs sought to enforce involved a wrong done to the partnership, the amendment and relation back should be permitted even though the applicable statute of limitations had expired.

*Stoppelman v. Owens, supra,* 580 F.Supp. at 946. Returning to the case at hand, the court held that

> [d]efendants in this action received proper notice of the claims at issue when Plaintiffs Stoppelman and Cohen filed their complaint on October 30, 1981. The addition of the other Plaintiffs did not bring any new claims into the action. The purpose behind the statute of limitations, namely notice, is not defeated in this action by permitting the amended complaint to relate back to October 30, 1981.

*Id.* at 947. Absent legally cognizable prejudice to the defendants, the court permitted the amendment.

Despite the similarity of the cases, the decision in *Stoppelman* seems to have extended the holding in *DeFranco.* While the additional plaintiffs in *DeFranco* had not presented any new claims in a suit seeking recovery of taxes paid by the partnership, the additional parties allowed in *Stoppelman* were asserting distinct claims for damages cumulative to those previously asserted by the first two plaintiffs.

In *Soler v. G & U Inc.,* 103 F.R.D. 69 (S.D.N.Y.1984), the district court allowed additional migrant workers to join a properly commenced suit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* to recover excessive rent deductions over defendants' objections that the actions were time-barred. The original suit had been brought by the named plaintiffs and on "behalf of others similarly situated." *Id.* at 76. The additional plaintiffs had all filed with the court the consent to sue form required under the FLSA. The court accordingly found that the original complaint and the consent to sue forms, which by themselves did not institute any action, gave defendants adequate notice that additional parties might be joining the action. *Id.* at 77. The court found no prejudice to defendants in spite of the potentially increased liability because the proposed amended complaint set forth no new legal theories and had not been undertaken to gain tactical advantage. *Id.* at 74–75.

In comparison to the defendants in the foregoing cases, the defendant in *Leachman v. Beech Aircraft Corp., supra,* received no adequate notice. That case involved a products liability suit by the wife of a pilot against the aircraft manufacturer for the death of her husband when his airplane crashed on takeoff in Guatemala. The parties dismissed the action filed immediately after the crash with a stipulation that contained a pledge that defendant would not interpose the statute of limitations if plaintiff later refiled. Plaintiff refiled the suit after the running of the statute of limitations, alleging a slightly different theory of liability. She also added claims for the value of the aircraft in the name of corporation that owned it. Plaintiff held all the stock of that corporation. Despite the identity of interest between the corporation and the plaintiff, the corporation's sole shareholder, the circuit panel in

*Leachman* denied relation back of the corporate plaintiff's claim. Plaintiff's stock ownership, the court held, even had defendant known of it, of itself would not have apprised defendant of the new cause of action for the value of the aircraft. *Id.* at 1309. The claim, therefore, although it arose out of the same occurrence, belonged to "an essentially unrelated victim." *Id.* at 1310.

In summary, allowing an amendment to relate back is proper (1) to substitute the real party in interest, (2) when the status of the original plaintiff and a liberal reading of the complaint apprise defendant of the existence of the additional plaintiff's existence and claims, or (3) if the defendant has had actual notice that additional parties might assert claims arising out of the transaction or occurrence at issue.

In the instant motion, plaintiffs seek to amend the complaint to include claims by three migrant workers who were evicted along with the four original plaintiffs from the worker housing on the Rogowski farm July 2, 1981. Defendants urge the Court to deny the motion because plaintiffs unduly delayed joining the three, because plaintiffs bring the motion in bad faith, and because the amendment would prejudice them. The Court rejects each of these assertions.

■ Defendants make only conclusory allegations of bad faith. In the absence of any evidence that plaintiffs' counsel used the existence of the three potential claimants solely to gain leverage in the settlement discussions, the Court is unwilling to conclude that the instant motion is brought in bad faith.

■ Plaintiffs' delay in moving to amend the complaint is more troubling. Even assuming plaintiffs' delay was without justification, however, that alone would not warrant denying leave to amend absent some showing of bad faith or resulting prejudice to the defendants. *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981). *Cf.* 6 Wright & Miller, § 1498 at 516 (a "few cases tend to suggest that if plaintiff's own inexcusable neglect was responsible for the failure to name the correct party, an amendment substituting the proper party will not be allowed notwithstanding adequate notice to the new party"); 3 J. Moore, *supra,* ¶ 15.15[4.–1] at 15–160 (plaintiff must show that his or her failure to join the correct parties was not due to inexcusable neglect). The Court could not say that plaintiffs' tardiness in the face of *bona fide* attempts to settle the dispute amounted to inexcusable neglect as opposed to simply shoddy practice. A far safer and more justifiable course for counsel to have followed, and one that would not have jeopardized the rights of any plaintiff, would have been either to move to amend despite the progress of negotiations to preserve the claim or to seek a stipulation from defendants extending the time to move.

■ Finally, defendant have made out no legally cognizable prejudice that resulted from the delay. As discussed above, the potential monetary liability defendants face on account of claims by the joined plaintiffs is not sufficient. *See Paskuly v. Marshall Field & Co.*, 494 F.Supp. 687, 689–90 (N.D. Ill.1980). Because each of the three plaintiffs sought to be added asserts claims identical to those made by the original four plaintiffs and that arise from the very same incident, defendants face no prejudice in defending those claims.

In sum, defendants have made no showing of undue delay, bad faith, or futility which would warrant denying plaintiffs leave to amend under Rule 15(a), Fed.R. Civ.P. *Cf. Ralli v. Tavern on the Green*, 566 F.Supp. 329 (S.D.N.Y.1983) (disallowing amendment to include counterclaim factually remote from central dispute when discovery completed and case ready for trial); *Chrysler Corp. v. Fedders Corp.*, 540 F.Supp. 706 (S.D.N.Y.1982) (counterclaim of malicious prosecution that would require scrutiny of the merits in six other pending lawsuits disallowed).

■ Because the proposed amendment meets the requirements of Rule 15(c) as well, it will relate back to the original com-

plaint. Luis Alberto Rivera, Miguel Rivera Soto and Angel Luis Rodriguez do not come as strangers to this litigation asserting claims that fortuitously arose out of the same incident. Their claims in the proposed amended complaint obviously stem from the same July 2, 1981 eviction. They therefore meet the "same transaction or occurrence" prong of Rule 15(c). In addition, defendants were aware throughout the course of this litigation that more workers than those who brought this suit had been evicted. The Rogowskis and state trooper DeFrancesco participated personally in evicting the nine migrant workers from the housing camp. Indeed, one or the other or both of the Rogowskis pointed out to trooper DeFrancesco those who were to be evicted. The defendants knew as well that those workers might bring claims. The complaint describes the incident from June 30, 1982 to July 2, 1982 as involving "plaintiffs, along with other workers," "plaintiffs and some of the other farmworkers," or "the group of workers who had left the field." Complaint at ¶¶ 23–25, 27. More importantly, the Rogowskis participated in settlement negotiations that involved demands made on behalf of Rivera, Soto, and Rodriguez. The parties' differing contentions as to the seriousness, duration, extent and termination date of those discussions does not affect the notice they provided of the other claims that might be asserted. Although counsel for Trooper DeFrancesco did not participate in those settlement discussions, he did know that they had occurred. Defendant DeFrancesco, therefore, also had notice of these additional claims.

As noted above, the Court discerns nothing from defendants' allegations of prejudice to warrant denying relation back. The complaint and subsequent settlement discussions apprised defendants of the existence of other potential claims outstanding. The actual notice consisting of statements contained in the complaint and of demands made in settlement discussions undercuts defendants' argument that they be accorded the benefit of repose under the statute of limitation. Because the new plaintiffs assert identical claims, defendants have not and likely could not claim any specific prejudice resulting from lost or destroyed evidence. Defendants may be forced to carry out additional discovery. To the extent discovery proves excessively burdensome because plaintiffs' counsel did not originally join all seven plaintiffs, the Court would consider a motion at the close of trial to offset the duplicative expense against any award plaintiffs may win.

In the absence of any meritorious objection, the Court grants plaintiffs' motion to amend the complaint and to allow the amendment to relate back to the filing of the original complaint. Given the Court's disposition of the motion, defendants' application for attorneys' fees is denied.

## CONCLUSION

Plaintiffs' original complaint and the subsequent settlement discussions apprised defendants of the existence of other plaintiffs with identical claims arising from the same incident of eviction. Although the statute of limitations had run before plaintiffs brought the instant motion to amend the complaint to add three additional plaintiffs, plaintiffs have met the requirements of Rule 15(a) to allow the proposed amended complaint and Rule 15(c), Fed.R.Civ.P., to allow the amended complaint to relate back to the filing of the original complaint. Accordingly, plaintiffs' motion is granted in its entirety. Defendants' application for attorneys' fees is denied. The parties are directed to complete discovery by February 27, 1987 and to file a joint pretrial order by March 27, 1987.

It is so ordered.