Heather Kitchel LEACHMAN, Northern Counties Lumber, Inc., Appellants,

v.

BEECH AIRCRAFT CORPORATION, A Delaware Corp., Appellee.

No. 81-2348.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 27, 1982.

Decided Dec. 3, 1982.

As Amended Jan. 10, 1983.

**16.** The plants in the third case consolidated before the Board were in Minnesota. *See supra* note 4.

**17.** *See supra* note 4.

Tom Davis, Washington, D.C., with whom Gerard R. Lear and Michael R. Davis, Washington, D.C., were on the brief, for appellants.

Robert H.J. Loftus, Fairfax, Va., with whom Gerald R. Walsh and Jacquelyn K. Boyden, Fairfax, Va., were on the brief, for appellee.

Before ROBINSON, Chief Judge, Mac-KINNON, Circuit Judge, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge McGOWAN.

McGOWAN, Senior Circuit Judge:

This appeal from the District Court involves the scope of a waiver of the statute of limitations contained in a stipulated dismissal of a tort action.

The suit arose out of the crash of a small airplane in Guatemala. The original action was brought against the respective manufacturers of the plane and its engine by the widow of the plane's pilot, and sought damages for his death. It alleged that "a defect in the ... engine and aircraft" had caused the crash. That action was dismissed by the stipulation. After the statutory time for filing suit had expired, a new action was brought seeking wrongful death damages from the maker of the plane alone and alleging that defective and dangerous "manuals, procedures, instructions, limitations, warnings, emergency procedures and other information pertaining to the [plane's] flight characteristics" had caused the crash. The new action also added a corporate plaintiff, the owner of the plane, and sought compensation for the value of the plane.

Upon a motion to dismiss the new complaint as time barred, the District Court was faced with the question whether the new action was within the scope of the stipulation, which pledged that defendant would not invoke the statute of limitations if the "plaintiff [were to] refile[ ] this action." Treating the motion as one for summary judgment, the District Court held that the new action was not within the waiver, and dismissed the action. For the reasons stated herein, we affirm as to the corporation's claim for property damage and reverse as to the widow's claim for wrongful death.

I

According to the allegations in plaintiffs' complaint, on December 6, 1976, a Beech Baron Model 58 aircraft, piloted by William H. Leachman, Jr., crashed near Santa Cruz Del Quiche Airfield, Guatemala. Leachman and his four passengers were killed and the plane was destroyed. Just short of a year later, on December 2, 1977, Leachman's widow and executrix, Heather Kitchel Leachman, filed a diversity action in the District Court against Beech Aircraft Corp. (Beech) and Teledyne Continental Motors (Teledyne). The complaint, docketed as Civil Action No. 77–2066, alleged that the crash of the plane and death of William

Leachman "were caused by a defect in the Defendants' engine and aircraft which caused it to fail shortly after take-off." Appellant's Appendix (App.) at 51a. Therefore, the complaint continued, the defendants were "strictly liable to the Plaintiff in tort for the death of" Mr. Leachman. *Id.* The plaintiff sought damages and any other relief "to which she [might] show herself justly entitled." *Id.* at 52a. Handwritten under the caption on the complaint were the words "(Strict Liability in Tort for Death)." *Id.* at 50a.

At the time the complaint in Civil Action No. 77–2066 was filed, it appears that the cause of the crash was still under investigation. Plaintiff's counsel nevertheless brought the action because he was fearful that Guatemala's one-year statute of limitations might apply. Attachment to Affidavit of Robert Martin, App. 27a. His primary theory of liability was that the plane's engine had failed, but he had not yet received the report of the teardown of the engine. Affidavit of Tom H. Davis, App. 79a. Thus, counsel for the parties agreed that Beech would not be required to respond to the complaint until such time as plaintiff's counsel notified counsel for Beech of an intention to proceed on the complaint. App. 33a. No such notification was ever received, because in May 1978 the parties entered into a "Stipulation of Dismissal," proposed and drafted by plaintiff, Affidavit of William L. Oliver, Jr., App. 34a, and approved by the District Court. The stipulation read:

> Now come all parties, pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure and file this stipulation dismissing this case. It is specifically stipulated by the parties that this dismissal is without prejudice to refile in this or another court before May 1, 1979. It is specifically stipulated that Beech Aircraft Corporation and Teledyne Continental Motors, a Division of Teledyne Industries,

Inc. waive any and all defenses arising from any applicable statute of limitations and agree that if plaintiff refiles this action, that [sic] they will not plead or claim the benefit of any statute of limitations.

App. 10a. By further agreement of the parties, "the time within which suit [might have been] refiled in accordance with the [above] agreement" was twice extended, first to December 1, 1979, and finally to March 1, 1980. App. 12a, 17a.

On February 22, 1980, plaintiffs Heather Kitchel Leachman and Northern Counties Lumber, Inc., (Northern Counties) filed a complaint against Beech, docketed as Civil Action No. 80–0509. It appears that Northern Counties, the owner of the plane, was wholly owned by Mr. Leachman at the time of the crash and is now wholly owned by his widow. Brief for Appellants at 21.[1] The new complaint alleged two causes of action, one based on breach of warranty and the other on products liability. (A claim sounding in negligence was dropped by a stipulated amendment of the complaint dated May 5, 1981. App. 70a; Record on Appeal at 29.) The strict liability claim alleged that the plane crashed because it .

> was unsafe for its intended use for the reason that the manuals, procedures, instructions, limitations, warnings, emergency procedures and other information pertaining to the flight characteristics of the subject aircraft were inadequate, misleading, inherently and unreasonably dangerous; [and because Beech had failed] to give plaintiff's decedent and others using the aircraft adequate warning of the nature and extent of the aforesaid danger resulting from use of the subject aircraft.

App. 75a–76a. The breach of warranty claim alleged that the manuals and other information were not free of hidden defects and dangers, were not of merchantable

---

1. Although this fact does not appear in the record and is only asserted in the plaintiffs'

brief on appeal, it was apparently brought to

quality, and were not fit for the purpose for which they were intended. App. 73a.[2]

The complaint sought $10 million in damages for Mrs. Leachman and $105,000, the value of the plane, for Northern Counties.[3]

Fifteen months after the filing of the complaint in Civil Action No. 80–0509, Beech moved to dismiss the complaint as time barred under the applicable statute of limitations. Relying on affidavits submitted by the parties and therefore treating the motion as one for summary judgment, District Court Order, App. 81a; see Fed.R. Civ.P. 12(b), the District Court granted the motion.

In an unpublished memorandum opinion, the court held, first, that the amended complaint in Civil Action No. 80–0509 did not by itself relate back under Fed.R.Civ.P. 15(c), which deals with the relation back of amendments to complaints, to the filing of Civil Action No. 77–2066. The court found (1) that the earlier action was based on facts different from those alleged in the later one so that the first complaint had not given Beech the necessary notice of the conduct for which the second complaint said it was liable, and (2) that the earlier action had been dismissed and was therefore no longer subject to amendment. Memorandum Opinion, App. 90a–94a.

The District Court further held that the waiver of the statute of limitations could not apply to claims, like those in Civil Action No. 80–0509, of which defendant had no notice, and that the term "this action" in the stipulation meant only Civil Action No. 77–2066, and not some new action arising out of the same controversy. Id. at 94a–97a.

Finally, the court held that the District of Columbia statute of limitations applied. Id. at 97a; see Steorts v. American Airlines, Inc., 647 F.2d 194 (D.C.Cir.1981). Under the District's three-year limitation on actions for the recovery of damages for an injury to real or personal property, D.C. Code Ann. § 12–301(3) (1981), Northern Counties's claim for the loss of the aircraft was held to be barred. Under the one-year limitation on wrongful death claims, D.C. Code Ann. § 16–2702 (1981), Mrs. Leachman's claim as widow and executrix of her husband's estate was also found to be barred. Memorandum Opinion, App. 97a.

## II

In reversing the dismissal of Mrs. Leachman's claim, we agree with the District Court that the District of Columbia statute of limitations will bar the present action unless it somehow relates back to the filing date of Civil Action No. 77–2066. The focus of this inquiry must be the scope of the defendant's waiver in the stipulation of dismissal.[4]

---

the attention of the trial judge. See Memorandum Opinion, App. 93a.

2. The plaintiffs have elaborated on these allegations in their brief on appeal. They allege that Beech failed to provide "necessary information concerning takeoff capabilities and aircraft performance when taking off from a grass airstrip," information that was provided with "aircraft sold outside the United States." Brief for Appellants at 10 n.*. Beech in its brief suggests that the plaintiffs are referring to Australian government regulations requiring certain calculations for take-offs from surfaces other than hard, dry, level runways. Brief of Appellee at 11.

3. In addition, both plaintiffs sought contribution or indemnity from Beech for sums paid in settlement of claims brought by the estates or representatives of the passengers who died in the crash. Since none of the parties had addressed the question of what statute of limitations should apply to these claims, the District Court declined to rule on whether they remained viable. Memorandum Opinion, App. 98a. Those claims are still pending before the District Court, and are not before this court on appeal.

4. On appeal, plaintiffs have not renewed their argument that rule 15(c), by its terms, applies to this case. They argue instead that plaintiffs "would have been able [under the stipulation] to file a complaint identical to that filed in Civil Action No. 77–2066 and then amend to assert the allegations asserted in the present suit." Plaintiffs argue that to require them to follow this "circuitous route" would "exalt[ ] form over substance." Brief for Appellants at 20.

We think it clear that if Mrs. Leachman had refiled precisely the same complaint, Beech would be barred from asserting a defense based on the statute of limitations. The complaint in Civil Action No. 80–0509 was not, however, the one filed in Civil Action No. 77–2066, but rather differed from it in three ways that merit brief discussion: (1) the new action added a claim for breach of warranty to the earlier claim based on strict liability; (2) the new action alleged that the crash occurred "on takeoff" rather than "shortly after take-off"; (3) the new action alleged that the crash was caused by defects in the manuals and instructions accompanying the aircraft rather than by "a defect in the . . . engine and aircraft." *See* Brief of Appellee at 9.[5]

In deciding that these changes put the complaint in Civil Action No. 80–0509 outside the scope of the waiver, the District Court found that "the plain and unambiguous meaning of 'this action' is Civil Action No. 77–2066." Memorandum Opinion, App. 96a. The new action was found not to be sufficiently similar to the old one because it was based on facts different from those alleged in the 1977 complaint. *Id.* Therefore, the court held, Beech had no notice of the potential claims and thus could not waive defenses as to them. The court suggested that if the new complaint had merely alleged new theories of liability based on the same basic conduct it would have found that Beech had the requisite notice. *Id.* at 93a.

We agree with the District Court's suggestion that the stipulation was not intended to bind the plaintiff to the particular language used in the 1977 complaint. The language of that document was so general that the parties must have anticipated that it could be amended, even if only to conform to the evidence offered at trial. We also think that the parties could not have intended the mere change of docket number to be significant. We believe the parties must have intended, at the very least, to allow plaintiff to file an action that was substantively identical to the one dismissed by stipulation. We differ from the District Court in that we find that the claims in the later complaint alleged essentially the same facts and theories as those in the earlier one.

First, the addition of the breach of warranty claim to the prior strict liability claim is insignificant because there appears to be little if any difference in the law of the District of Columbia between the two causes of action. The District of Columbia Court of Appeals has noted that the differences, "if any," between the two "are conceptual." *Cottom v. McGuire Funeral Service, Inc.,* 262 A.2d 807, 808 (D.C.1970).

> "Implied warranty recovery is based upon two factors: (a) The product or article in question has been transferred from the manufacturer's possession while in a 'defective' state * * * and (b) as a result of being 'defective', the product causes personal injury or property damage." On the other hand, strict liability in tort is imposed on a manufacturer "when an article he places on the market * * * proves to have a defect that causes injury to a human being" or his property. Whether contract or tort, there is a liability imposed for injury caused by placing a defective product into the stream of commerce in the District of Columbia.

*Id.* at 808–09 (footnotes omitted), *quoting Picker X-Ray Corp. v. General Motors Corp.,* 185 A.2d 919, 922 (D.C.1962), and *Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 62, 377 P.2d 897, 900, 27 Cal.Rptr. 697, 700 (1962) (en banc); *see Young v.*

---

Given our disposition of Mrs. Leachman's claim for wrongful death damages, we need not reach her invocation of rule 15. As to the effect of rule 15 on Northern Counties's claim for property damage, *see infra* Part III.

**5.** The new complaint also dropped Teledyne as a defendant and added claims for contribution or indemnity for settlements with the passengers. *See supra* note 3. The addition of Northern Counties as a party and its claim for property damage is discussed in Part III *infra*.

*Up-Right Scaffolds, Inc.,* 637 F.2d 810, 813 (D.C.Cir.1980). In the case at bar, the plaintiff may have added the new claim merely because of some lingering uncertainty as to whether the District of Columbia has in so many words adopted the doctrine of strict liability in tort for product defects. *See id.*

Second, investing with any significance the distinction between the allegation that the crash occurred "on take-off" and the claim that it occurred "shortly after take-off" appears to us to be hairsplitting of the finest variety. Defendant has failed to suggest any persuasive difference between the two, either through the force of logic or through Beech's own reliance on the distinction. The allegation in the original complaint sufficed to notify defendant of the approximate time of the accident. The subsequent change merely refined that approximation.

The final distinction, between defects in manuals and defects in aircraft, is more difficult, because one cannot say that "manuals" equals "aircraft." Nonetheless, an allegation that there were defects in the aircraft encompasses one that there were defects in the manuals. The latter class of defects constitutes a subset of the former.

First, aircraft manuals are required by law to be in the plane, 14 C.F.R. § 91.31(b) (1982), so they are as much a part of the plane as if they were bolted to it. Second, the duty to manufacture a plane free of defects, which was drawn into question in the first complaint, includes the duty to provide warnings and manuals that are also free of defects. Under products liability law, the plane's flight characteristics may be unreasonably dangerous and give rise to liability unless accompanied by warnings as to the dangers. Thus, the presence of warnings can cure the unreasonable danger. As the Fifth Circuit stated in *Martinez v. Dixie Carriers, Inc.,* 529 F.2d 457, 465 (5th Cir.1976), "[L]ack of an adequate warning in itself renders a product defective or unreasonably dangerous within the meaning of products liability law." *Accord Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 100, 337 A.2d 893, 902 (1975) ("A 'defective condition' is not limited to defects in design or manufacture. The seller must provide with the product every element necessary to make it safe for use. One such element may be warnings and/or instructions concerning use of the product."); 2 S. Speiser & C. Krause, Aviation Tort Law § 19.14 (1979); Restatement (Second) of Torts § 402A comment h (1965) ("a product sold without such warning is in a defective condition"). Thus, in certain circumstances, an allegation that an aircraft is defective may mean that the warnings that were supplied were inadequate or defective.

Because we find that the claims raised in the second complaint were essentially the same as those raised in the first, we need not deal with the District Court's finding that defendant could not waive the statute of limitations as to claims of which it had no notice.[6]

---

**6.** Beech's counsel seek to make much of various representations made to them by Leachman's counsel that (1) "if the [engine] teardown conclusions were that Beech was not at fault, he would enter a dismissal of" Beech, Attachment to Affidavit of Robert Martin, App. 27a, and (2) he was seeking the extensions of the stipulation because the passenger cases had not yet been settled and because "he was waiting to see if the engine teardown . . . revealed any problem with the engine," Affidavit of William L. Oliver, App. 35a. The latter representations may have been false when made in 1978 and 1979, since Leachman's counsel now says that the report from the engine inspection, showing no evidence of engine failure or defect, arrived "shortly . . . after" the original complaint was filed in December 1977. Affidavit of Tom H. Davis, App. 79a. Beech argues that plaintiff is estopped from raising "new claims" other than engine defect because defendant relied, in granting, and later extending, the waiver, on its understanding of the limited nature of plaintiff's claims. Bri[e]f of Appellees at 33–34; *accord id.* at 21–22.

While the suggestion of willful misrepresentation is disturbing, there is insufficient evidence to warrant acting upon it. In the absence of that, we do not think Beech's counsel had reason to rely on apparently off-hand comments discussing the current focus of plaintiff's investigations where the complaint clearly alleged defects in both engine *and* aircraft.

### III

As plaintiffs' counsel conceded at oral argument, the addition of Northern Counties's claim for property damage stands on very different ground. The original complaint did not contain a claim for loss of property. Although Mrs. Leachman sought all damages "to which she [might] show herself justly entitled," the original complaint was labeled "strict liability in tort for death." It alleged only that the defendants were liable to the plaintiff "in tort for the death of William H. Leachman, Jr." App. 51a. There was no mention of any possible property claim. Most important, Northern Counties was the owner of the property claim and it was not a plaintiff in that action. Thus, unlike Mrs. Leachman's claim in the new complaint, Northern Counties's claim is not substantively the same as any of the claims raised in the 1977 complaint.

Moreover, we do not think that an ordinary reading of the language of the stipulation of dismissal suggests that the addition of a new party with a new claim was contemplated. The stipulation uses the words "if plaintiff refiles this action." The only "plaintiff" in the action at that time was Mrs. Leachman. In interpreting a contract, a court will presume that the parties intended the words to have the meaning they have in ordinary English usage unless there is some reason to believe the parties had a different one in mind. *See* Restatement (Second) of Contracts § 202(3) & comment e (1981).

Northern Counties argues that under rule 15(c) it could be added to a pending suit brought by Mrs. Leachman. In effect, the argument is that the word "plaintiff" should be read to include Mrs. Leachman and any party that could be added to the suit under the Federal Rules of Civil Procedure after the statute of limitations had run. Given the circumstances under which the stipulation was proposed and agreed to, this is not an implausible reading.

When plaintiff filed her original action, she was not yet certain of its factual predicates. Her counsel feared that the statute of limitations might shortly bar her action so he filed a general allegation of defective manufacture in order to preserve his client's claims. He clearly had no interest in proceeding rapidly to trial with no theory and while involved in the settlement of the claims of Mr. Leachman's passengers. Affidavit of Tom H. Davis, App. 79a. By the same token, Beech apparently had no desire at that time to "have the matter fully and speedily adjudicated and disposed of on the theory of engine defect," as it now claims, Brief of Appellee at 19, because it agreed to postpone answering until notified that plaintiff intended to proceed. Beech no doubt saw no reason to engage in a costly defense of the suit if the plaintiff might eventually decide to dismiss the case. First, the engines had been preserved and transferred to the United States. Second, an investigation of the crash had been completed in Guatemala. Third, plaintiffs' counsel had exhibited a willingness to dismiss if he found no reason to blame Beech.

This hope that the suit might simply "go away" must have been bolstered five months later when plaintiffs' counsel, for reasons that remain obscure, proposed dismissing the action with leave to refile. There was no real reason for defendant not to agree.

What emerges is a sense that plaintiffs' counsel sought time to develop his theory of the case and defendant's counsel was willing to grant the time on the chance that the suit might be voluntarily dismissed. Neither party exhibited any intention to bind plaintiff to her original complaint. On the contrary, it may well be that the intention was that that document was merely a provisional complaint intended to toll the statute of limitations and notify defendant of a possible suit. The stipulation was probably an attempt by plaintiffs' counsel to tie up loose ends on a complaint that seemed unlikely to go anywhere, or to assure defendant's counsel of his good faith, without foreclosing the option of proceeding. No convincing evidence of bad faith by plaintiffs' attorney has been adduced.

Under the circumstances, it appears highly plausible that the status intended to be

created by the parties was that if plaintiff were to restart the action, it would be treated for purposes of the statute of limitations as if it had not been dismissed. (Defendants would, of course, retain all of their statutory and common law rights under the same conditions. There does not appear to have been any intention to allow plaintiff to stop the clock as to any claims not already asserted in the complaint.)

The use of the term "refile this action," while less clear than might be desired, does not alter that conclusion. "Action" is the term used in the Federal Rules to mean "lawsuit," *see, e.g.,* Fed.R.Civ.P. 15(c) (for amendment of complaint to relate back, new defendant must have had "notice of the institution of the action"); *Craig v. United States,* 413 F.2d 854, 858 (9th Cir.), *cert. denied,* 396 U.S. 987, 90 S.Ct. 483, 24 L.Ed.2d 451 (1969) ("'action,' as used in Rule 15(c), means a lawsuit"), and complaints in lawsuits can be amended.

The question thus becomes whether a corporation wholly owned by an existing plaintiff can be added to an action under rule 15 after the statute of limitations has run when the corporation seeks to allege a claim for damages that, although it arises out of the same occurrence as the original claims, was not asserted by the original plaintiff in the original complaint. Under the circumstances of this case, we think the answer is no.

Rule 15(c) deals expressly only with amendments changing defendants, but the Advisory Committee note to the 1966 amendment of the rule instructs the courts to extend "by analogy" the "attitude" taken in the rule to amendments changing plaintiffs. 39 F.R.D. 69, 83–84 (1966). The rule reads, in relevant part,

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied

and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

As the Advisory Committee note suggests, 39 F.R.D. at 83, it is clear that the crucial policy underlying the rule is notice to the party opposing the amendment.

What remains unclear is whether, when a new plaintiff is added, the notice that the defendant must have is notice of the "conduct, transaction, or occurrence" that is challenged or, in addition, some kind of notice of the existence of the new party and its claim. If it is the former, then Northern Counties should be able to bring its claim, since the property loss occurred in the same plane crash at issue in Mrs. Leachman's claim. If it is the latter, the question is much closer.

The Fifth Circuit addressed this question in the case of *Williams v. United States,* 405 F.2d 234 (5th Cir.1968). In that case, the mother of a boy injured by an Army firecracker sued the United States under the Federal Tort Claims Act as next friend of her injured son. After the two-year statute of limitations had elapsed and a verdict for plaintiff had been obtained on the merits but not on damages, the mother sought to amend the complaint to appear as a party plaintiff in her own right seeking recovery for loss of services. The Fifth Circuit, reversing the district court, granted the amendment.

The appellate court held that when a new plaintiff with a new claim is sought to be added after the statute of limitations has lapsed, something more is needed than merely notice to the defendant of the conduct or occurrence that gave rise to the claim:

> Not only must the adversary have had notice about the operational facts, but it

must have had fair notice that a legal claim existed in and was in effect being asserted by, the party belatedly brought in. This becomes of special importance in situations in which a common set of operational facts gives rise to distinct claims (or defenses) among distinct claimants (or defendants).

*Id.* at 238. The Court found that this test was met under the facts in *Williams* because the operational facts were fully stated in the original complaint and the complaint, "read with the required liberality, ... clearly revealed the existence of (a) a minor (b) the mother as parent and (c) the assertion by her of a claim." *Id.* at 239. The government "was put on notice that the parent's claim was also involved" because the "circumstances of these individuals was such as would reasonably indicate a likelihood that the parent would incur losses of a recoverable kind." *Id.* The court expressly refused to decide whether the result would be different if the son's next friend had been "a nonrelated person, such as a corporate fiduciary, so that the suit did not reveal the existence of a parent and the assertion of some claim by that parent." *Id.* at 239 n.13.

We find persuasive the emphasis by the court in *Williams* on the need to limit relation back of claims asserted by new plaintiffs in some way beyond the "conduct, transaction, or occurrence" test that applies to relation back of amendments generally. Without some limit, total strangers with claims arising out of a multi-victim incident might join pending actions long after the statute of limitations had lapsed. That would allow the tardy plaintiffs to benefit from the diligence of the other victims and, more importantly, could cause defendants' liability to increase geometrically and their defensive strategy to become far more complex long after the statute of limitations had run. Even if, as here, there were no showing of specific prejudice in the sense of lost or destroyed evidence, defendants would still be deprived of their interest in repose. At some point, defendants should have notice of who their adversaries are.

The plaintiffs argue that because Mrs. Leachman and Northern Counties have a "complete identity of interest" through her stock ownership, defendant had the requisite notice. In deciding on motions to add new plaintiffs, courts often mention the identity of interest of the old and new plaintiffs. 6 C. Wright & A. Miller, Federal Practice and Procedure § 1501 & n.33 (1971 & 1982 Supp.); *see, e.g., Staren v. American National Bank & Trust Co.,* 529 F.2d 1257, 1263 (7th Cir.1976); *Longbottom v. Swaby,* 397 F.2d 45, 48 & n.6 (5th Cir.1968); *Fashion Novelty Corp. v. Cocker Machine & Foundry Co.,* 331 F.Supp. 960, 964–65 (D.N.J.1971). The point of the courts' consideration of identity of interest is that that factor ensures that the old and new plaintiffs are sufficiently related so that the new plaintiff was in effect "involved in [the proceedings] unofficially from an early stage." 3 J. Moore, Moore's Federal Practice ¶ 15.15[4.–1], at 15–220 (1982). The touchstone once again is whether the defendant knew or should have known of the existence and involvement of the new plaintiff. *Cf.* Fed.R.Civ.P. 15(c) (amendment adding defendant will be allowed only if new defendant "knew or should have known" that, but for mistake of identity, action would have been brought against him or her).

Here, there is no showing that Beech had notice of the potential involvement of Northern Counties. Nor is there reason, as there was in *Williams,* to believe defendant should have known of it. In *Williams,* the original plaintiff's status as next friend of the injured boy was, as a practical matter, intimately connected to the fact that she was his mother. The amendment to add the new plaintiff was merely a change in capacity, and the defendant must have known of the existence of the plaintiff's other capacity. Here there is no relation between Mrs. Leachman's claim and her ownership of the corporation's stock. Her claims would not have been affected if Mr. Leachman had willed the stock to another relative or to a complete stranger. The nature of Mrs. Leachman's action thus gave no notice of the existence of Northern Counties.

In *Williams,* moreover, the new claim for loss of services also arose out of the plaintiff's status as the boy's mother. Once the defendant knew of that status, it had reason to know of the potential claim she might assert in that capacity. Here, Mrs. Leachman's ownership of Northern Counties, even if defendant had been put on notice of it, would not have given Beech reason to know of Northern Counties's property claim. Northern Counties's claim was simply a new cause of action, arising out of the same occurrence to be sure, but brought by an essentially unrelated victim. If Northern Counties desired to toll the statute of limitations, it should have brought the action itself.[7]

## IV

The District Court's judgment is accordingly affirmed as to Northern Counties's claim for property damage to its aircraft, and reversed as to Heather Kitchel Leachman's claim for wrongful death damages based on strict liability and breach of warranty. The case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[7.] Plaintiffs have offered no reason for their failure in their original pleading to join Northern Counties or to assert the claim for loss of property, or for their failure to do so for more than two years thereafter. *See* 6 C. Wright & A. Miller, *supra,* § 1498, at 516 ("A few cases tend to suggest that if plaintiff's own inexcusable neglect was responsible for the failure to name the correct party, an amendment substituting the proper party will not be allowed . . . ."); 3 J. Moore, *supra,* ¶ 15.15[4.–1], at 15–221 (plaintiff must show that his or her failure to join the correct parties was not due to inexcusable neglect).

It may be argued that Mrs. Leachman could herself attempt to add the property claim under rule 15(c) and then later substitute Northern Counties as the correct party. If Mrs. Leachman had originally asserted the property claim, it is conceivable that she might be allowed to follow such a course to correct an error in pleading. Consistent with the interests of justice, *see* Fed.R.Civ.P. 15(a) (leave to amend shall be freely given when justice so requires); *id.* rule 1 (rules to be construed to obtain a just result), however, we do not think any court would allow the rules to be manipulated to achieve a result that would be. barred if attempted directly.