Jacques J. CREPPEL, et al., Plaintiffs,

v.

The UNITED STATES, Defendant,

Lila Richards MOLAISON,
et al., Plaintiffs,

v.

The UNITED STATES, Defendant,

MARRERO LAND & IMPROVEMENT
ASS'N, LTD., Plaintiff,

v.

The UNITED STATES, Defendant,

Lloyd James DRACHENBERG,
et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

Nos. 91–1262L, 91–1505L,
91–1508L and 91–1509L.

United States Court of Federal Claims.

June 28, 1995.

David C. Loeb and Harold E. Molaison, Gretna, LA, for plaintiffs.

Marc A. Smith and Ann D. Navaro, Washington, DC, with whom was Asst. Atty. Gen. Lois J. Schiffer, for defendant. Pat Rankin, U.S. E.P.A., and Elizabeth Griffin, U.S. Army Corps of Engineers, of counsel.

## OPINION

MILLER, Judge.

These takings cases are before the court on defendant's motion to dismiss the first joint consolidated and amended complaint and on defendant's motion for partial sum-

mary judgment. The two issues for resolution are 1) whether plaintiffs may amend their original consolidated complaints to add 43 new plaintiffs not named in the original complaints; and 2) whether certain named plaintiffs in the original complaints fail to state a claim upon which relief can be granted because they did not own interests in the subject properties on the date of the alleged taking. Argument is deemed unnecessary.

## FACTS

The following facts are undisputed, unless otherwise noted. Plaintiffs own marshland in Jefferson Parish, Louisiana ("Jefferson Parish"). Plaintiffs' properties lie within a 3,200-acre region known as the Bayou Aux Carpes Site (the "site"). The site includes several contiguous tracts of land known as the Marrero property, the Harvey property, the Crowell property, the Dietze property, and the Peach Orchard property.[1]

The site is the location of a U.S. Army Corps of Engineers (the "Corps") flood control project. This project, known as the Harvey Canal–Barataria Levee Project, involved the closing of two navigable bayous and the building of levees and a pumping station. The project, as originally conceived, also involved certain land reclamation features. Prior to completion of the project, Congress passed the Clean Water Act of 1977, Pub.L. No. 95–217, 91 Stat. 1566 (1977) (codified as amended at 33 U.S.C. § 1344 (1988)) (the "CWA"). Section 404 of the CWA prohibits the discharge of dredged or fill material into navigable waterways without a permit. 33 U.S.C. § 1344 (1988 & Supp. V 1993). On July 10, 1974, activity at the Bayou Aux Carpes was halted until the Corps could determine whether the project complied with section 404 of the CWA.

The Corps ultimately decided to proceed with the project as planned. The United States Environmental Protection Agency ("EPA"), however, objected to the closing of the bayous because it would result in the destruction of wetlands protected by the CWA. On November 16, 1976, Brigadier General Drake Wilson of the Corps issued an order modifying the project (the "Wilson Order"). The Wilson Order, which was endorsed by EPA, halted construction of the pumping station and required the use of flood gates in place of dikes. The Wilson Order eliminated the land reclamation features of the original project. Local landowners filed suit. On October 31, 1977, the landowners obtained a preliminary injunction prohibiting the Jefferson Parish, which had sponsored the project, from abandoning the land reclamation project. This injunction became permanent. *Creppel v. Parish of Jefferson*, 352 So.2d 297 (La.Ct.App. 4th Cir. 1977), *aff'd*, 384 So.2d 853 (La.Ct.App. 4th Cir.), *writ denied*, 392 So.2d 689 (La.1980). The landowners also obtained a court order permanently enjoining the Parish from abandoning the original project. *Creppel v. Parish of Jefferson*, No. 199–345 (24th Jud. Dist. Jefferson Parish, Jan. 12, 1979).

While the state action was pending, the same landowners brought suit in federal district court seeking to overturn the Wilson Order. On summary judgment the district court held that General Wilson had not abused his discretion in ordering the modified project. *Creppel v. United States Army Corps of Eng'rs*, 500 F.Supp. 1108, 1119 (E.D.La.1980), *rev'd in part and aff'd in part*, 670 F.2d 564 (5th Cir.1982). On appeal the Fifth Circuit agreed that General Wilson had not abused his discretion, but reversed and remanded to determine whether Jefferson Parish would provide assurances of the revised project's completion. *Creppel*, 670 F.2d at 574–75. On remand the district court found that Jefferson Parish would not provide the necessary assurances and that the revised project could not be completed. *Creppel v. United States Army Corps of Eng'rs*, No. 77–25, slip op. at 5 (E.D.La. Aug. 13, 1984). The district court therefore set aside the Wilson Order and ordered the original project to go forward. On December 14, 1984, the district court stayed this order pending an EPA decision to initiate C.W.A. § 404(c) proceedings.

On December 17, 1984, EPA commenced section 404(c) proceedings and on August 30,

---

1. For additional background see *Creppel v. United States*, 30 Fed.Cl. 323, 324–28, *rev'd in part*

*and remanded*, 41 F.3d 627 (Fed.Cir.1994), and *Creppel*, 41 F.3d at 629–30.

1985, issued a Recommended Determination that EPA veto the project. On October 16, 1985, EPA issued a Final Determination permanently blocking completion of the original project. In May 1986 the landowners sought to overturn EPA's decision. On June 29, 1988, the district court upheld EPA's Final Determination ruling that EPA did not abuse its discretion. *Creppel v. United States Army Corps of Eng'rs*, No. 77–25, 1988 WL 70103 (E.D.La. June 29, 1988). The district court remanded the case to determine whether Jefferson Parish would grant assurances for the modified project. When Jefferson Parish failed to provide assurances the district court dismissed the landowners' lawsuit. *Creppel v. United States Army Corps of Eng'rs*, No. 77–25 (E.D.La. Oct. 12, 1989).

On July 5, October 10, and October 11, 1991, the landowners filed four consolidated claims in the then United States Claims Court, alleging both temporary and permanent takings. The four claims concerned the Dietze, Crowell, Peach Orchard, and Marrero properties. Defendant moved for summary judgment, arguing that plaintiffs' claims were barred by the statute of limitations. The court held that plaintiffs' causes of action accrued when the Wilson Order issued on November 16, 1976. *Creppel v. United States*, 30 Fed.Cl. 323 (1994), and dismissed the complaint. On appeal the Federal Circuit reversed in part, holding that only plaintiffs' temporary takings claims were time-barred. *Creppel v. United States*, 41 F.3d 627 (Fed.Cir.1994). The permanent takings claims accrued on October 16, 1985, the date of EPA's Final Determination blocking completion of the original project and therefore were filed within the six-year limitations period.

On March 29, 1995, plaintiffs moved the court for leave to file Plaintiffs' First Joint Consolidated and Amended Complaint (the "Amended Complaint"). Plaintiffs propose to include 43 additional plaintiffs not named in the original complaints. Of these 43 proposed new plaintiffs, 38 owned interests in land located within the Bayou Aux Carpes on October 16, 1985, the date of the alleged permanent taking. Of this latter group, 32 owned property interests in the Harvey tract; one owned property in the Crowell tract; three owned property in the Dietze tract; and two owned property in the Peach Orchard tract.[2] Neither the Harvey tract nor any of its owners were the subject of the initial four consolidated complaints.

Five of the 43 proposed new plaintiffs acquired interests in property located within the Bayou Aux Carpes after the date of the alleged taking.[3] Several of the original named plaintiffs also acquired interests in property after the date of the alleged taking by means other than succession. The Bernard Alvin Goldman and Marjorie Finn Goldman Wetlands Trust (the "Wetlands Trust") acquired its interest in the Crowell tract by donation. The Wetlands Trust, along with William H. Mosby, Mary E. Mosby Giannobile, and Gary L. Goldman also acquired their interests in the Dietze tract by donation. Shirley Manning wife of/and Robert A. Pitre and Carolyn Creppel wife of/and Lloyd J. Drachenberg purchased their interests in the Peach Orchard tract after the alleged taking date. Plaintiffs contend, and defendant disputes, that Michelle Margaret Creppel Martorelli acquired her interest in the Peach Orchard tract through the succession of her father, Gary Creppel.

Defendant opposed, arguing that the claims of all 43 additional plaintiffs are time-barred by the six-year statute of limitations. Defendant also moved for partial summary judgment against those plaintiffs named in the original complaints who did not own property on the date of the alleged taking. Defendant further contends that plaintiffs' motion to amend the complaints should be denied with respect to two individuals who are deceased and that summary judgment should be granted with respect to two indi-

---

2. These individuals are, apart from the 32 Harvey tract owners, Dr. Bernard A. Goldman (Crowell tract); Dr. Bernard A. Goldman, Dr. William H. Mosby and Thirba Wishingrad Green (Dietze tract); and Gerald J. Pitre, Jr., and Marguerite Zar Creppel (Peach Orchard tract).

3. These individuals are Jacques Creppel and Michelle Margaret Creppel Martorelli of the Peach Orchard tract and Michael A. Wolfe, Mark E. Wolfe, and Karen Wolfe Ernst of the Harvey tract.

viduals named in the original complaints who are likewise deceased.[4]

## DISCUSSION

### I. *Statute of limitations*

■ Defendant argues that the 43 proposed additional plaintiffs did not assert their claims within six years of the accrual date, October 16, 1985, and that their claims are therefore time-barred. The applicable statute of limitations provides: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (1988). In *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the Supreme Court noted that statutes of limitations "represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" 444 U.S. at 117, 100 S.Ct. at 356–57 (quoting *Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)).

■ The statute of limitations is jurisdictional in the Court of Federal Claims. *Soriano v. United States*, 352 U.S. 270, 273, 77 S.Ct. 269, 271, 1 L.Ed.2d 306 (1957) (discussing this court's predecessor, the United States Court of Claims); *Broughton Lumber Co. v. Yeutter*, 939 F.2d 1547, 1550 (Fed.Cir. 1991); *Hart v. United States*, 910 F.2d 815, 817, 818 (Fed.Cir.1990); *see United States v. Mottaz*, 476 U.S. 834, 841, 106 S.Ct. 2224, 2229, 90 L.Ed.2d 841 (1986). The "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano*, 352 U.S. at 276, 77 S.Ct. at 273. Accordingly, the statute of limitations must be strictly construed. *Id.; Kirby v. United States*, 201 Ct.Cl. 527, 539, 1973 WL 21341 (1973), *cert. denied*, 417 U.S.

919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974). The statute of limitations defense is affirmative and must be pleaded. RCFC 8(c). The Government bears the burden of proof as to the statute of limitations defense, and a plaintiff has the burden of proof as to any exception to this defense. *Duvall v. United States*, 227 Ct.Cl. 642, 646, 652 F.2d 70 (1981) (Table); *accord Warner v. United States*, 223 Ct.Cl. 754, 755, 1980 WL 13158 (1980).

■ Plaintiffs argue that the Amended Complaint seeking to add the 43 new plaintiffs relates back to the date of the original pleading. RCFC 15(c) provides: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." The test for determining whether a claim arose out of the "conduct, transaction, or occurrence" underlying the initial pleading is "whether the general fact situation or the aggregate of the operative facts underlying the claim for relief in the first petition gave notice to the government of the new matter." *Vann v. United States*, 190 Ct.Cl. 546, 557, 420 F.2d 968, 974 (1970) (construing a rule identical to RCFC 15(c)). The notice requirement derives from the rule's rationale "that a party who has been notified of litigation concerning a particular occurrence has been given all the notice the statutes of limitations were intended to provide." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 149–50 n. 3, 104 S.Ct. 1723, 1725 n. 3, 80 L.Ed.2d 196 (1984). RCFC 15(c) therefore requires the court to compare the original complaint to the amended version with a view to determining whether the first pleading gave adequate notice of the new claims.

The issue whether parties, as opposed to claims, may be added via a relation-back theory was addressed in *Snoqualmie Tribe of Indians v. United States*, 178 Ct.Cl. 570, 372 F.2d 951 (1967). The Snoqualmie Tribe brought suit against the United States alleg-

---

4. The deceased individuals among the proposed new plaintiffs are Thirba Wishingrad Green (Dietze tract) and Arthur E. Wolfe, Jr. (Harvey tract). The deceased individuals named in the original complaints are Harold L. Molaison (Dietze tract) and Gary B. Creppel (Peach Orchard tract).

ing that under the Treaty of Point Elliot it had ceded certain lands for unconscionable consideration. After the relevant limitations period had run, the Snoqualmie sought to amend their complaint to include a claim on behalf of another tribe, the Skykomish. The issue was whether the amendment could relate back to the original petition under the Indian Claims Commission's Rule 13(c), a rule identical to RCFC 15(c). The Court of Claims stated:

> [T]he amendment appears to introduce a new party and a new cause of action. The general rule, as defendant points out in a review of a spate of cases, is that the rule of relation back does not extend to amendments that add new parties or causes of action. But stating the general rule is not too helpful here, for it simply states a conclusion. Each case must be tested by the "conduct, transaction, or occurrence" standard to determine whether adequate notice has been given. Applying this standard to our facts, it is apparent that the Point Elliot Treaty is the "transaction" giving rise to the claims of the tribes involved. The government would doubtless accept this, but argues that the original Snoqualmie claim, alleging unfair treatment under the Treaty, did not in fact give notice of the subsequent Skykomish claim. We think the government and the Commission have taken an unduly narrow view of the notice requirement. First, we note that on our theory of representation there is no new party added by amendment. The Snoqualmie Tribe is the only claimant; it is simply an entity serving in two representative capacities. The government can be charged with notice of this possibility through its authority as administrator of Indian Affairs. Second, although the claim brought by the Snoqualmie organization "on relation of" the Skykomish Tribe is technically a different cause of action from that presented originally, it is sufficiently closely related to warrant the conclusion that the government received adequate notice of the possibility that it might have to defend against a broader claim.

*Snoqualmie Tribe,* 178 Ct.Cl. at 588, 372 F.2d at 961 (citations omitted). The court noted that the particular government conduct at issue "affected all Treaty participants." *Id.* The court added that "[o]nly the proof on tribal boundaries would be different, and here the government has not been prejudiced in any way by appellant's tardiness in clarifying its position." *Id.* at 588–89, 372 F.2d at 961.

The Court of Claims emphasized that the Skykomish Tribe was not an existing organization, but one whose members had been absorbed by intermarriage into neighboring tribes such as the Snoqualmie. This unique connection between the Skykomish and the Snoqualmie formed the basis for what the court referred to as the Snoqualmie's " 'corporate' representative" capacity. *Snoqualmie Tribe,* 178 Ct.Cl. at 582, 372 F.2d at 958. The Court of Claims noted, however, that it "would have greater difficulty allowing the amendment if . . . [the court] thought it was brought by an entirely unrelated party even though it arose out of the same transaction." 178 Ct.Cl. at 589, 372 F.2d at 961.

In *Baldwin Park Community Hospital v. United States,* 231 Ct.Cl. 1011, 1982 WL 25837 (1982), the Court of Claims again addressed the issue whether an original petition could be amended to add plaintiffs pursuant to a relation-back rule identical to RCFC 15(c). Plaintiff prosecuted an action against the United States alleging that it had not received adequate reimbursement for the cost of providing health services to Medicare beneficiaries. Plaintiff sought to amend the original petition to add 36 new plaintiffs. Citing *Snoqualmie* and other cases, the court observed that the underlying rationale for the relation-back doctrine "is that the opposite party had received timely notice of the claim asserted against him." *Baldwin Park,* 231 Ct.Cl. at 1012. In ruling that defendant had received adequate notice, the court focused on the shared corporate identity of the 36 additional plaintiffs who "were operated and owned, either directly or through subsidiary corporations, by plaintiff Humana, or by a company to which Humana is the legal successor in interest." *Id.* The court further held that defendant would not be prejudiced by the amendment because "the amended claims are not new or different, but

rather virtually identical to the original claims." *Id.*

■ *Snoqualmie* and *Baldwin*, precedent binding on this court, stand for the proposition that, when additional parties are to be added under RCFC 15(c), the new parties must bear a formal connection to the original plaintiffs apart from the shared experience of alleged government misconduct. In *Snoqualmie* the original plaintiff was the tribal organization to which the new plaintiffs, members of the Skykomish Tribe, belonged. The connection in *Baldwin* between the original plaintiffs and the new plaintiffs, based on corporate ownership, was equally direct. The court in *Snoqualmie* cautioned against a deviation from this standard by basing its reasoning partially on the fact that no new claimant was being added. *Snoqualmie,* 178 Ct.Cl. at 588, 372 F.2d at 961. ("[W]e note that on our theory of representation there is no new party added by amendment.") Accordingly, sufficient notice to the opposing party may be found where an intimate legal relationship, such as tribal affiliation or corporate ownership, exists between the original and new plaintiffs.

### 1. *The Harvey tract plaintiffs*

■ The facts in the present case stand in marked contrast to those in *Snoqualmie* and *Baldwin.* The four initial consolidated takings claims concerned owners of the Dietze, Crowell, Peach Orchard, and Marrero tracts, respectively. Even assuming, *arguendo,* that the claims of the Harvey tract plaintiffs arose out of the same transaction or occurrence that gave rise to the original complaints, no corporate or other legal relationship exists between the Harvey tract plaintiffs and the original plaintiffs. The identity of interest between the original and proposed new plaintiffs is limited to geographic proximity—the fact that all landowners, at the time of the alleged taking, owned property within the Bayou Aux Carpes, the site of the federal flood control project. The geographic proximity of a discrete parcel of land to property owned by plaintiffs asserting a takings claim is not enough. The fact that the Harvey tract exists within the Bayou Aux Carpes does not represent the degree of formal con-

nection between the old and new plaintiffs necessary to notify defendant that the additional claims were being asserted against it. *See Snoqualmie Tribe,* 178 Ct.Cl. at 589, 372 F.2d at 961 (allowability of amendment questioned if brought by entirely unrelated party although arising out of same transaction); *see also Baldwin,* 231 Ct.Cl. at 1012.

Plaintiffs did not cite either *Snoqualmie* or *Baldwin* to support their argument that the Harvey tract plaintiffs properly relate back under RCFC 15(c). Instead, plaintiffs rely on *Williams v. United States,* 405 F.2d 234 (5th Cir.1968). That case was an action brought under the Federal Tort Claims Act on behalf of a boy who had sustained injuries from the explosion of an Army M–80 firecracker. The case passed between the district court and the Fifth Circuit, finally coming to rest in the district court on the original trial record for a determination of damages and entry of judgment against the Government. At this point the boy's mother, who had been involved in the case as next friend, sought leave to amend the complaint to appear as a plaintiff in her own right in order to recover for loss of services as allowed under state law. Adopting defendant's argument that the mother's claim was barred by the statute of limitations, the district court disallowed the amended complaint.

The Fifth Circuit, quoting extensively from *Snoqualmie,* reversed. The court adhered to the general rule that, in determining whether a party received adequate notice, "the usual emphasis of 'conduct, transaction or occurrence' is on the operational facts which give rise to a claim...." *Williams,* 405 F.2d at 238. The court stated:

> But when it comes to a late effort to introduce a new party, something else is added. Not only must the adversary have had notice about the operational facts, but it must have had fair notice that a legal claim existed in and was in effect being asserted by, the party belatedly brought in. This becomes of special importance in situations in which a common set of operational facts gives rise to distinct claims (or defenses) among distinct claimants (or defendants)....

*Id.* In expressly limiting its holding to the facts before it, the court ruled that the original complaint provided defendant with adequate notice of the new claim. The court placed special emphasis on the mother/son relationship and on the fact that under state law the liability of the minor would give rise to the liability of the parent. Reasoning from these facts, the court held that "the Government was put on notice that the parent's claim was also involved." *Id.* at 239.

Plaintiffs read *Williams* for the proposition that the notice requirement is heightened in situations involving the proposed relation back of amendments seeking to add new plaintiffs under RCFC 15(c). This is not an incorrect reading of *Williams*. Not only must the opposing party have received notice of the operational facts underlying the new claims, but defendant "must have had fair notice that a legal claim existed in and was in effect being asserted by, the party belatedly brought in." *Williams*, 405 F.2d at 238. In addressing the first of these requirements, plaintiffs argue that the original complaints put defendant on notice of the operational facts out of which the new claims arise. According to plaintiffs, the claims of the additional plaintiffs arise from the same regulatory process culminating in EPA's CWA § 404(c) Final Determination as described in the original complaints. Since the claims of each of the additional plaintiffs arise out of the same general fact situation set forth in the original complaints, plaintiffs contend that defendant received adequate notice of the operational facts. *Id.* To this point plaintiffs' argument has merit. It is the second requirement in *Williams*, however, that plaintiffs cannot satisfy.

Plaintiffs assert that the original complaints facially reveal the existence of each of the 35 Harvey tract landowners now sought to be added as parties plaintiff and that a justifiable inference may be drawn that these landowners were involved in the litigation. Plaintiffs note that the original complaints refer repeatedly to the Bayou Aux Carpes Site and the Harvey Canal–Barataria Levee Project, both of which encompass the Harvey tract. Plaintiffs also assert that ¶ X of the Creppel Complaint (concerning the Crowell

property) refers to the Harvey tract itself ("the adjacent property"). Plaintiffs contend that these "references" warrant the inference that the Harvey tract landowners were involved in this matter.

Reference in the original complaints to a geographic area in which the Harvey tract resides is not a reference to the Harvey tract, nor even if it were, does it justify the inference that the owners of the Harvey tract were in some way asserting a takings claim. Likewise, reference in the original complaints to the Government's flood control project, although the title of the project contains the term "Harvey Canal," does not refer to the Harvey tract, nor does it justify the inference that the Harvey tract landowners were seeking to redress the effects of government activity related to that project.

Moreover, plaintiffs' contention that the phrase "the adjacent property" in the original complaints refers to the Harvey tract is not substantiated by the record. Plaintiffs ignore the fact that several tracts of land abut the Crowell property, including three tracts which were the subject of claims timely filed. Contrary to plaintiffs' preferred reading, the phrase "the adjacent property" in the original complaints more likely refers to one of those tracts whose owners had timely filed in conjunction with the owners of the Crowell tract. The original complaints do not contain information sufficient to notify defendant that the proposed additional plaintiffs have been involved in the litigation from the beginning. *Leachman v. Beech Aircraft Corp.*, 694 F.2d 1301, 1309 (D.C.Cir.1982) (citing 3 James W. Moore, *Moore's Federal Practice* ¶ 15.15[4.–1], at 15–220 (1982)); *Williams*, 405 F.2d at 238; *see also LeMasters v. K–Mart, Inc.*, 712 F.Supp. 518, 520 (E.D.La.1989) (knowledge of potential cause of action not sufficient; proposed additional plaintiff must have been involved in litigation). The initial complaints in this action did not adequately notify defendant within the six-year limitations period that the Harvey tract owners had particular takings claims to assert.

### 2. *The remaining additional plaintiffs*

At the time of the alleged taking, several of the proposed additional plaintiffs owned interests in property that was the subject of the four initial consolidated complaints. Specifically, Dr. Bernard A. Goldman owned an interest in both the Crowell and Dietze tracts; Dr. William H. Mosby owned an interest in the Dietze tract, as did Thirba Wishingrad Green (now deceased); Gerald J. Pitre, Jr., and Marguerite Zar Creppel owned interests in the Peach Orchard tract.[5] The initial consolidated complaints informed defendant that the parcels of land owned by these individuals, unlike the Harvey tract, were the subject of takings claims. The question whether the Amended Complaint properly relates back as to these individuals, however, focuses on whether their ownership interest in the subject property provided defendant with sufficient notice that these individuals were asserting takings claims against it. *Baldwin*, 231 Ct.Cl. at 1012; *Snoqualmie Tribe*, 178 Ct.Cl. at 588, 372 F.2d at 961.

 Defendant correctly notes that a Fifth Amendment takings claim is unique to the individual landowner who allegedly has been affected by governmental action. This principle derives from the essentially *ad hoc* nature of takings inquiries. *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). The Fifth Amendment requires an evaluation of the particular property interests involved, including a highly subjective inquiry into an individual property owner's "distinct investment-backed expectations." *Id.* at 124, 98 S.Ct. at 2659. Since the nature of the individual property interest is unique, a claim based upon the alleged taking of that property interest is equally unique.[6] The

distinct claims of the proposed new plaintiffs do not properly relate back to the original complaints because defendant was not adequately apprised of these distinct claims in the earlier pleadings. *Williams*, 405 F.2d at 238 (notice that legal claim existed in and was being asserted by proposed new plaintiff "of special importance in situations in which a common set of operational facts gives rise to distinct claims (or defenses) among distinct claimants (or defendants)").

 Defendant is entitled to reasonable assurances of repose. *See United States v. James Daniel Good Real Property*, —— U.S. ——, ——————, 114 S.Ct. 492, 506–07, 126 L.Ed.2d 490 (1993); *Kubrick*, 444 U.S. at 117, 100 S.Ct. at 356; *see also Wood v. Carpenter*, 101 U.S. 135, 139, 25 L.Ed. 807 (1879) (statutes of limitations "are found and approved in all systems of enlightened jurisprudence"). Determinations of fact, particularly in fact-intensive takings claims, cannot be made with confidence when, "because of the passage of time, the memories of witnesses have faded or evidence is lost." *Wilson v. Garcia*, 471 U.S. 261, 271, 105 S.Ct. 1938, 1944, 85 L.Ed.2d 254 (1985). Were plaintiffs allowed to press their claims "at any distance of time," it would be "utterly repugnant to the genius of our laws." *Adams v. Woods*, 6 U.S. (2 Cranch) 336, 342, 2 L.Ed. 297 (1805). Statutes of limitations are designed specifically to prevent dilatory plaintiffs from pressing stale claims. RCFC 15(c) properly is read as a supplement to, and not a circumvention of, the jurisdictional boundaries established by the statute of limitations. Plaintiffs' attempt to add new plaintiffs with distinct takings claims beyond the six-year limitations period is inconsistent both with the statute of limitations and the

---

5. Plaintiffs neglected to include Marguerite Zar Creppel as an additional plaintiff in the Amended Complaint. Plaintiffs, however, did list her in Plaintiffs' Notice of Additional Plaintiffs as a record title owner of an interest in the Peach Orchard tract at the time of the alleged taking.

6. The initial complaints themselves emphasize the uniqueness of the individual takings claims. The complaint concerning the Dietze tract contains the following paragraph:

Significantly, not all property within the Bayou Aux Carpes area has been similarly

treated, as evidenced by the grant of a permit to adjacent landowner, Louis Shushan, to allow fill to be taken from Bayou Barataria and the Harvey Canal and deposited as fill on the Shushan property, but denying similar requests to the landowners of the Dietze tract, thus further discriminating against the landowners' use of their property.

Molaison Compl. filed Oct. 10, 1991, ¶ XXVII. The complaint concerning the Crowell tract contains an identical paragraph. Creppel Compl. filed July 5, 1991, ¶ XXIX.

doctrine of sovereign immunity that the statute was intended to preserve. The initial consolidated complaints did not adequately apprise defendant of the proposed new plaintiffs now being arrayed against it. Accordingly, the Amended Complaint does not relate back to the original consolidated complaints and therefore is barred by the statute of limitations.[7]

## II. *Subsequent transferees*

Plaintiffs also describe a number of individuals named in the Amended Complaint as "subsequent transferees." Plfs' Mtn. To Amend Compl., filed Mar. 29, 1995, Ex. B.[8] Defendant asserts that those individuals alone who owned subject property on the date of the alleged taking are proper parties plaintiff in this case. Defendant addresses only the claims of those "subsequent transferees" who acquired property interests by means other than valid succession. Defendant makes no objection to those subsequent transferees designated as successors to de-

ceased individuals who owned property on the date of the alleged taking and whose claims are not barred by the statute of limitations.[9] Specifically, defendant seeks dismissal of the Amended Complaint with respect to Jacques Creppel and Michelle Margaret Creppel Martorelli (Peach Orchard tract) and summary judgment against the following individuals named in the original complaints: Shirley Manning wife of/and Robert A. Pitre, Carolyn Creppel wife of/and Lloyd J. Drachenberg (Peach Orchard tract); the Wetlands Trust, William H. Mosby, Mary E. Mosby Giannobile, Gary Leon Goldman (Dietze tract); and the Wetlands Trust (Crowell tract).

It is well settled that a viable takings claim may only be asserted by those individuals who owned the subject property on the date of the taking. *United States v. Dow,* 357 U.S. 17, 20–22, 78 S.Ct. 1039, 1043–44, 2 L.Ed.2d 1109 (1958) (construing Assignment of Claims Act, 31 U.S.C. § 3727).[10]

7. Plaintiffs argue that application of the six-year statute of limitations to the claims of the proposed additional plaintiffs violates their Fifth Amendment rights. The crux of this argument is that it is the Constitution, and not Congress or the courts, that guarantees a landowner's Fifth Amendment rights. According to this view, neither Congress nor the courts can place a jurisdictional limit on a cause of action brought under the Fifth Amendment.

Plaintiffs misunderstand the import of the statute of limitations applicable to the Tucker Act. The Tucker Act places jurisdictional limits on the Court of Federal Claims. 28 U.S.C. § 2501. It does not proscribe a plaintiff's substantive constitutional rights. *See, e.g., Soriano v. United States,* 352 U.S. 270, 277, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957) (applying statute of limitations in takings case).

8. Five of the proposed new plaintiffs are listed as subsequent transferees: Jacques Creppel and Michelle Margaret Creppel Martorelli (Peach Orchard tract) and Michael A. Wolfe, Mark E. Wolfe, and Karen Wolfe Ernst (Harvey tract). Although plaintiffs list Jacques Creppel and Michelle Margaret Creppel Martorelli as subsequent transferees, plaintiffs argue that, under the peculiarities of Louisiana property law, these individuals owned property interests in the subject property at the time of the alleged taking. The claims of Jacques Creppel and Michelle Margaret Creppel Martorelli are barred by the statute of limitations. Accordingly, the court need not determine the type of ownership interests, if any, possessed by Jacques Creppel and Michelle Mar-

garet Creppel Martorelli on the alleged taking date.

9. Those individuals named in the Amended Complaint with listed successors are Harold L. Molaison and Thirba Wishingrad Green (Dietze tract) and Arthur E. Wolfe, Jr. (Harvey tract). The record indicates that Gary B. Creppel is deceased. Although plaintiffs do not list Michelle Margaret Creppel Martorelli as a successor to Gary B. Creppel in the Amended Complaint, plaintiffs assert that she inherited Gary B. Creppel's interest in the subject property upon his death, "entitling her to substitute as an additional plaintiff to assert that claim." Plfs' Br. filed May 16, 1995, at 13. Plaintiffs, however, failed to move for substitution pursuant to RCFC 25(a)(1).

10. The Assignment of Claims Act, 31 U.S.C. § 3727 (1988), precludes plaintiffs from asserting that subsequent transferees may bring suit based upon their status as successors-in-interest to individuals who would have been valid plaintiffs. *See Dow,* 357 U.S. at 20, 78 S.Ct. at 1043. The Act states:

(a) In this section, "assignment" means—
(1) a transfer or assignment of any part of a claim against the United States Government or of an interest in the claim; or
(2) the authorization to receive payment for any part of the claim.
(b) An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued....

Individuals who become divested of their interest in the subject property prior to the date of the taking are not entitled to just compensation. 357 U.S. at 20–21, 78 S.Ct. at 1043–44. Likewise, individuals who did not acquire their interests in the subject property until after the date of the taking may not obtain just compensation. "[I]t is undisputed that ... '[since] compensation is due at the time of taking, the owner at that time, not the owner at an earlier or later date, receives the payment.'" *Id.* at 20–21, 78 S.Ct. at 1043–44 (quoting *Danforth v. United States,* 308 U.S. 271, 284, 60 S.Ct. 231, 236, 84 L.Ed. 240 (1939)). Accordingly, subsequent transferees who did not own interests in the subject property on the date of the alleged taking, October 16, 1985, fail to state claims upon which relief can be granted and are not proper parties plaintiff.

Plaintiffs do not dispute that the subsequent transferees did not own subject property on the date of the alleged taking, nor do plaintiffs contend that the subsequent transferees state individual takings claims. Instead, plaintiffs, relying on RCFC 19(a), argue that the subsequent transferees "are indispensable to a just, complete, and final adjudication." Plfs' Br. filed May 15, 1995, at 5. Plaintiffs' argument flies wide of the mark. The alleged taking took place on October 16, 1985, and any interest relinquished by the landowners, and acquired by the Government, occurred on that date. Subsequent transferees, by definition, are not parties to this exchange, because whatever interest these individuals hold is necessarily distinct from the property already taken by the Government. The joinder rules are therefore inapplicable in that those individuals necessary for according "complete relief," RCFC 19(a), are already part of the instant action. *See Kemp v. United States,* 199 Ct.Cl. 993, 1972 WL 5178 (1972) (individual who did not own subject property on the date of alleged taking not a proper party plaintiff in the case).

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS SO ORDERED,** as follows:

1. Plaintiffs' Motion for Leave of Court To File Plaintiffs' First Joint Consolidated and Amended Complaint filed on March 29, 1995, is denied with respect to the following proposed new plaintiffs because their claims are barred by the statute of limitations: Dr. Bernard A. Goldman (Crowell tract); Dr. Bernard A. Goldman, Dr. William H. Mosby, and Thirba Wishingrad Green (Dietze tract); Gerald J. Pitre, Jr., Marguerite Zar Creppel, Jacques Creppel, and Michelle Margaret Creppel Martorelli (Peach Orchard tract); and each of the 35 proposed Harvey tract plaintiffs.

2. Plaintiffs' motion is denied with respect to those proposed new plaintiffs who are deceased, *i.e.,* Thirba Wishingrad Green (Dietze tract) and Arthur E. Wolfe, Jr. (Harvey tract).

3. Defendant's motion for partial summary judgment is granted with respect to two of the original plaintiffs who are now deceased, *i.e.,* Harold L. Molaison (Dietze tract) and Gary B. Creppel (Peach Orchard tract).

4. Defendant's motion for partial summary judgment is granted with respect to the following original plaintiffs who had no interest in the subject property on the date of the alleged taking: Shirley Manning wife of/and Robert A. Pitre, Carolyn Creppel wife of/and Lloyd J. Drachenberg (Peach Orchard tract); the Wetlands Trust, William H. Mosby, Mary E. Mosby Giannobile, and Gary L. Goldman (Dietze tract); and the Wetlands Trust (Crowell tract).